STATE FARM MUTUAL AUTOMOBILE IN-
SURANCE COMPANY, a Corporation, and
John E. Shepard, Jr., Plaintiffs-Respond-
ents,

v.

MID–CONTINENT CASUALTY COMPANY
OF TULSA, OKLAHOMA, a Corporation,
and John E. Gazzolo and Anna M. Gazzolo,
Defendants,

Mid-Continent Casualty Company of Tulsa,
Oklahoma, a Corporation, Defend-
ant-Appellant.

No. 31599.

St. Louis Court of Appeals.

Missouri.

April 21, 1964.

Harlan & Harlan, John L. Harlan, Jr., Clayton, for defendant-appellant.

Wm. L. Mason, Jr., James L. Sullivan, St. Louis, for defendants.

Evans & Dixon, A. J. Seier, John F. Evans, St. Louis, for plaintiffs-respondents.

BRADY, Commissioner.

Mr. and Mrs. Gazzolo brought an action for wrongful death of their minor child against John E. Shepard, Jr. and Robert G. Schlottach. Shepard and his insurance company, State Farm Mutual Automobile Insurance Company, hereinafter referred to as State Farm, then brought this action against Mid-Continent Casualty Company of Tulsa, Oklahoma, hereinafter called Mid-Continent, requesting that the trial court construe the provisions of the two policies of insurance to determine which policy provided "excess" and which provided "primary" coverage. The trial court held that State Farm's policy provided only "excess" coverage, and Mid-Continent has appealed.

The pertinent provision of Mid-Continent's policy is as follows: "III. Definition of Insured: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual,

his spouse if a resident of the same household, *and also includes any person while using the automobile* and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. The insurance with respect to any person or organization other than the named insured or such spouse does not apply:* (1) to any person or organization, or to any *agent or employee* thereof, operating an automobile sales agency, repair shop, *service station*, storage garage or public parking place, *with respect to any accident arising out of the operation thereof*, but this provision does not apply to a resident of the same household as the named insured, to a partnership in which such resident or the named insured is a partner, or to any partner, agent or employee of such resident or partnership (Original Ex. A, T. 17)." (Emphasis supplied.)

The pertinent provisions of State Farm's policy are as follows: "14. Other Insurance. If the insured has other insurance against liability or loss covered by this policy, the company under all coverages except coverages C and M, shall not be liable for a greater proportion of such liability or loss than the applicable limit of liability bears to the total applicable limit of liability of all collectible insurance against such liability or loss. (b) The insurance with respect to a temporary substitute automobile, a trailer and a non-owned automobile shall be excess over other collectible insurance (Original Ex. B, T. 18)."

Shepard and Schlottach were longtime friends. Schlottach was an employee of a service station owned by others, where Shepard had worked in the past. Schlottach's duties were to operate the grease rack, change tires, and do any minor repairs that were requested on Sunday. On the particular Sunday here involved neither of the owners of the station were on the premises. There was a part-time employee there, but Schlottach was in charge. However, he had no authority to hire anyone.

Nothing further appears in the record as to the part-time employee's general duties or what he was doing at the time this incident occurred. Shepard had acquired some second-hand mufflers, and he took them to the filling station where Schlottach worked in order to put them on his automobile. His testimony was that in the past "They let me put it up on the rack sometimes when I do small things to the car." When he arrived at the filling station, he asked Schlottach, "* * * if I could put my car on the grease rack." Schlottach gave permission to do so. Shepard drove his car onto the grease rack, and Schlottach operated the hoist lever so that Shepard's automobile could be raised. Schlottach and Shepard measured the mufflers and found that they wouldn't fit. Shepard noticed water leaking out of his automobile and said to Schlottach, "I wonder where this is coming from?" and Schlottach replied, "I think from the freeze plug." Upon examination it was discovered the freeze plug had rusted through, and Schlottach told Shepard it would have to be replaced. Installation of such plugs was a part of Schlottach's regular duties. Shepard asked Schlottach, "* * * whether they had a freeze plug and he said, no, they didn't, and I asked where I could pick one up and he said, down at Jimmy's." Schlottach's testimony was to the same effect with the additional information that the service station's parts department was closed until Monday. Jimmy's was about a mile or mile and one-half from the service station. Schlottach testified that Shepard's automobile was totally inoperative until a new freeze plug was installed. Shepard testified that he asked Schlottach if it would be all right to use his car to go to Jimmy's, and Schlottach gave him permission to do so. Schlottach's testimony differs somewhat in that he testified that as Shepard started to walk to Jimmy's, he passed Schlottach's automobile, "* * * and I told him to go ahead and take my car." Schlottach did not say anything else or put any limitation of any kind on Shepard's use of his automobile

nor give any directions as to the trip. He did not intend to charge Shepard for the use of the car and did not do so. Schlottach did intend to install the plug when Shepard returned with it. Shepard's testimony was that he knew the automobile belonged to Schlottach personally and did not belong to the service station owners. Schlottach's testimony was that his personal automobile had never before been used in connection with the operation of the service station and that the owners had never made any statement of any kind to him about using his automobile in connection with the operation of the station. Shepard testified that when he got to Jimmy's, he was told that he would have to go back and get the old freeze plug so that they could be sure they had the right size. This he did, and upon his return to the service station Schlottach took the plug out of Shepard's automobile and handed it to Shepard, who then returned to Jimmy's. It was on the return leg of his second trip to Jimmy's that the accident resulting in the death of the Gazzolo child occurred.

Shepard paid for the freeze plug himself, and Schlottach neither gave him the money to pay for it nor directed him to charge it to the station's account with Jimmy. After the accident occurred, Shepard's brother brought the new freeze plug to Schlottach, who then installed it in Shepard's automobile. Shepard never paid anything for this service, and neither was he given a bill for it. Schlottach's testimony was that he forgot to make out a bill for the work.

The trial court found that Shepard was using the automobile with the permission of the owner and named insured in Mid-Continent's policy, i. e., Schlottach. The trial court also found that Shepard was "* * * not using the automobile in the operation of an automobile sales agency, repair shop, service station, * * * and was not an agent or employee of any person or organization operating such * * * business." The trial court decreed that Mid-Continent's policy provided primary insurance for Shepard and that Mid-Continent was

therefore required to defend Shepard in the Gazzolo's death action, to pay all costs and attorneys' fees of said defense, and to satisfy any judgment up to the limits of said policy which may be adjudged against Shepard in the Gazzolo action.

■ The provisions of Mid-Continent's policy are clear. The coverage afforded by that policy extends to any person driving the Schlottach automobile with his permission unless certain exceptions apply. There is no dispute as to the fact that Shepard was driving with Schlottach's permission. The issue is whether any of the exceptions stated in the omnibus clause of the policy apply. The rule is that " * * * provisions limiting, cutting down, or avoiding liability in the coverage made in the policy are construed most strongly against the insurer. * * * " Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 1. c. 639–640, 86 A.L.R.2d 925. A careful reading of the provisions of III, (a), (1) of Mid-Continent's policy in the light of the factual situation here involved will show that even though Shepard had Schlottach's permission to drive the latter's automobile, the coverage afforded by the omnibus clause of Schlottach's policy would not apply if Shepard was the agent or employee of a person operating a service station and had an accident arising out of the operation of that service station. Since Mid-Continent's denial of primary coverage rests upon its interpretation of a policy exclusionary clause, it has the burden of proof. Gennari v. Prudential Ins. Co. of America, Mo., 335 S.W.2d 55; State Bank of Poplar Bluff v. Maryland Casualty Co., 8 Cir., 289 F.2d 544.

There is no evidence that would justify considering Shepard an operator of the service station or an employee of the operator. Both Shepard and Schlottach testified he was not an employee, and Shepard testified he was a hoisting engineer. Schlottach had no authority to hire any employees.

Mid-Continent places its greatest reliance upon the contention that Shepard was acting as the agent of the service station in driving Schlottach's automobile to get the freeze plug. Stephanelli v. Yuhas, 135 Pa. Super. 573, 7 A.2d 124, is very similar on the facts to the instant case. In that case Walsh operated an automobile repair shop. His wife owned an automobile which was insured by a policy having an omnibus clause and accompanying exclusions essentially identical to that here involved. Yuhas took his truck to Walsh's shop for repairs. It was discovered that a "tie bolt" was needed to make the repairs. Walsh did not have such a bolt in his stock and would have to obtain one from a supply house in Scranton, Pa. Yuhas stated he had to go to Scranton to get his pay check, and Walsh asked him to get the tie bolt. Yuhas agreed to do so. It was stipulated that Yuhas drove Mrs. Walsh's automobile to Scranton with her permission. In that case as in the instant case the only matter in dispute was whether the exception in the omnibus clause applied. The court recognized that Yuhas could be the servant of both Walsh and his own employer in going to get the tie bolt, citing the Restatement, Agency, Sec. 266. In making its decision that Yuhas was not Walsh's agent the court relied upon the fact that Walsh had no control over the way Yuhas operated the automobile or as to the manner in which the act of securing the tie bolt should be executed, and the fact that Walsh did not pay Yuhas for his services nor use Walsh's automobile. These same things are true in the instant case. Shepard did not use the automobile of the owner of the station, he was not paid for his services in securing the freeze plug, and Schlottach, the employee of the service station owner, exercised no control over Shepard as to how he drove to Jimmy's or in what manner he purchased the freeze plug. Moreover, in Stephanelli v. Yuhas, supra, Walsh asked Yuhas to get the needed part. Since the evidence in the instant case is that Shepard asked Schlottach where he could get the freeze plug, the instant case would seem even stronger against Shepard's agency than Stephanelli v. Yuhas.

However, we prefer to place our decision upon another basis. We hold that even assuming Shepard to be an "agent" within the terms of the exception to the omnibus clause, still the exception would not apply for the reason that Shepard's accident was not one arising out of the operation of a service station. The clause "arising out of the * * * use * * *" has been held to be a very broad, general and comprehensive term unless limited by other language in the policy. Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 1. c. 183, 154 A.L.R. 1088. Substituting the word "operation" as used in the exclusion in this case for the word "use" appearing in the Schmidt case, Mid-Continent contends that the words "arising out of the operation" of a service station may also be said to be very broad and general. Be that as it may, we do not think these words so broad as to encompass the situation here presented. Whether this accident arose out of the operation of the service station must depend upon the circumstances of the particular case, the nature of the transaction, its connection with the business and whether it can be said to be a natural and necessary incident or consequence of the operation of the service station even though not a foreseen or expected consequence of that operation. Allen v. Travelers Indemnity Co., 108 Vt. 317, 187 A. 512.

The circumstances of the instant case and the nature of the transaction here involved weigh heavily against Mid-Continent's contention. Shepard had been allowed to use the service station's facilities to make minor repairs on his automobile in the past. He and Schlottach were old friends, and Shepard had worked at the station at one time. While there is no explanation in the transcript as to what the part-time employee was doing or what his duties were, the very fact he was present and was not used for this errand raises a reasonable inference, when the evidence as to the lack of any charge being made is remembered, that this errand was not considered to be on behalf

of the service station but was the gratuitous act of a friend. The same may be said as to Schlottach's own evidence that it was when he saw Shepard start to walk to Jimmy's he told Shepard to take his car.

With respect to the connection this transaction bore to the business and whether it can be said to be a natural and necessary incident or consequence of the operation of a service station even though not a foreseen or expected consequence of that operation, the evidence weighs even more heavily against Mid-Continent. It may well be argued that it is a natural and necessary incident to the modern day operation of a service station doing automobile repairs as this one did that a vehicle should be maintained upon the premises for the purpose of securing supplies and running errands. However, we cannot hold it is a natural and necessary incident to the operation of a service station to use an employee's personal automobile for that purpose in the absence of an agreement between the owner of the service station and the automobile owner as to such an arrangement. For example, such an express agreement could exist where the use of the employee's automobile for such a purpose was a condition for his employment. For another example, such an agreement might be implied, if the employee understood from the general practice of the operation of such businesses that his personal automobile was expected to be made available for such purposes or from the fact that the use of his automobile for such a purpose had been the customary practice in the past. There is no such evidence in this case, and neither is there any evidence giving rise to any reasonable inference to that effect. In fact the evidence is that Schlottach's automobile had never before been used in connection with the operation of the service station.

It follows that the exclusionary clause set forth in the omnibus coverage as stated in Mid-Continent's policy does not apply, and the coverage afforded by the

omnibus provisions of that policy does apply to Shepard. Accordingly, Mid-Continent's policy provides primary coverage, and State Farm's policy under the provisions of Paragraph 14, (b), provides excess coverage. Fidelity & Casualty Company of New York v. Western Casualty & Surety Company, Mo.App., 337 S.W.2d 566. The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

RUDDY, P. J., and WOLFE, J., and FRANK W. HAYES, Special Judge, concur.

ANDERSON, J., not participating.