**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a corporation, Appellant,**

v.

**MISSOURI POWER AND LIGHT COMPANY, a corporation, Respondent.**

No. 58578.

Supreme Court of Missouri, En Banc.

Dec. 16, 1974.

Rehearing Denied Jan. 13, 1975.

Howard F. Major, David A. Oliver, Columbia, for appellant.

Frank B. Edwards, Edwards, Seigfreid, Runge & Hodge, Mexico, for respondent.

HENLEY, Judge.

This is an action by American Family Mutual Insurance Company (American Family or appellant), an automobile liability insurer, against Missouri Power and Light Company (Missouri Power), a self-insurer, seeking a judgment declaring that Missouri Power is primarily liable for and obligated to pay part of an amount paid by American Family in settlement of claims against its insured arising out of a collision involving an automobile owned by Missouri Power and driven with its permission by the insured on his personal business. Judgment was for Missouri Power and American Family appealed to the Court of Appeals, St. Louis district, which affirmed. On application of appellant we ordered the case transferred to this court and, after review as authorized by Mo.Const. Art. V, § 10, V.A.M.S., affirm.

The case was submitted to the trial court on the pleadings and a stipulation of facts.

American Family issued its standard policy of automobile liability insurance to George H. Sohns (now deceased) covering his Chevrolet. The policy also provided coverage while Mr. Sohns was driving an unowned car to the extent such car was not covered by "other valid and collectible insurance." Mr. Sohns was a district manager of Missouri Power. Missouri Power had qualified as a "self-insurer" under The Motor Vehicle Safety Responsibility Law,[1] and required any of its employees who had permission to drive its cars on personal business to obtain public liability insurance covering his operation of the company automobile. While Mr. Sohns was driving one of Missouri Power's cars with its permission on his personal business a collision occurred involving that car and a car driven by Delmar Hilderbrand resulting in personal injuries to Mr. Hilderbrand. Mr. and Mrs. Hilderbrand filed a suit claiming damages for his personal injuries, for her loss of consortium, and for damage to their property alleging that the collision was caused by the negligence of Mr. Sohns. As indicated, that suit was settled and a stipulation filed wherein the parties agreed (1) that American Family had paid $25,000 to the Hilderbrands for their damages; (2) that the parties to this suit reserved the right to litigate as between themselves whether Missouri Power, as a self-insurer, is primarily liable for the Hilderbrand damages and American Family liable only for the "excess" above any amount for which Missouri Power may be obligated; and (3) that if it is finally adjudged that Missouri Power is primarily liable, it will pay to American Family $20,400 as its share of the amount paid in settlement of the Hilderbrand claims.

American Family contends that Missouri Power's statutory obligations as a self-insurer constitute "other valid and collectible insurance" within the meaning of the liability policy issued to Mr. Sohns, or, more specifically, within the meaning of the "excess coverage provision" thereof applicable to the operation of an unowned automobile, so as to make Missouri Power primarily liable for the Hilderbrand damages. The question thus presented is one of first impression in this state.

The sections of the statutes with which we are particularly concerned are 303.030, 303.160, 303.190 and 303.220.

---

[1]. Chapter 303, RSMo 1969, V.A.M.S. All references to sections of the statutes are to that revision and V.A.M.S.

Section 303.030 provides the procedures to be followed by the director of revenue relative to the owner and operator of a motor vehicle *after* involvement in a motor vehicle accident in this state which resulted in death or injury of a person or damage to property in excess of $100. This section also provides for suspension of the license of the operator and registration of the owner unless the owner or operator or both deposit security in a sum determined by the director. It further provides that the suspension provisions shall not be applicable to an operator who is not the owner "if there was in effect at the time of such accident an automobile liability policy * * * with respect to his operation of motor vehicles not owned by him * * *" (subsection 4, subdivision (2)) or to an owner who has qualified "as a self-insurer under section 303.220 * * *" (subsection 4, subdivision (4)).

Section 303.220 provides that the director may on application issue a certificate of self-insurance under certain conditions to any person in whose name more than 25 motor vehicles are registered.

Section 303.160, subsection 1, subdivision (4), provides that when required by Chapter 303, proof of financial responsibility with respect to a motor vehicle may be made by filing "[a] certificate of self-insurance, as provided in section 303.220, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer."

As to the judgments and amounts thereof an insurer would be obligated to pay under an owner's motor vehicle liability policy, § 303.190, subsection 2, subdivision (2) provides that such policy "[s]hall insure the person named therein and any other person, as insured, using any such motor vehicle * * * with the * * *

permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle * * *, subject to limits * * * [of] ten thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and two thousand dollars because of injury to or destruction of property of others in any one accident."

In Winterton v. Van Zandt, 351 S.W.2d 696, 700[1] (Mo.1961) the court said that the provisions of The Motor Vehicle Safety Responsibility Law " * * * are indicative of the public policy of this state to assure financial remuneration * * * for damages sustained through the negligent operation of motor vehicles upon the public highways of this state not only by the owners of such automobiles but also all persons using them with the owners' permission * * *." See also: City of St. Louis v. Carpenter, 341 S.W.2d 786, 788[2] (Mo.1961).

Although the question presented has not been ruled on by the appellate courts of this state, the courts of at least two other states have. See: The Home Indemnity Company v. Humble Oil and Refining Company, 314 S.W.2d 861 (Tex.Civ.App. 1958); Allstate Insurance Company v. Zellars, 452 S.W.2d 539 (Tex.Civ.App.1970), affirmed by Supreme Court of Texas in opinion reported in 462 S.W.2d 550, 552[1] (1970); Southeast Title and Insurance Co. v. Collins, et al., 226 So.2d 247 (Fla.App. 1970). Cf. Comorote v. Massey, 110 N.J. Super. 124, 264 A.2d 478, 481[2–3] (1970).

The provisions of our Safety Responsibility Law are almost identical with the Texas Safety-Responsibility Law. In the Home Indemnity case, supra, the Texas Court of Civil Appeals construed and applied the provisions of that state's law to facts essentially the same as these in this

case. The court held in that case that a certificate of self-insurance held by Humble Oil did not constitute other valid and collectible insurance within the meaning of an operator's liability policy issued by Home Indemnity to one Cole, its insured, an employee of Humble who was driving its car with its permission on personal business at the time of an accident. The reasoning of that opinion is persuasive. The court said, at 865–866:

" * * * (1) That the legislative intent of the Safety-Responsibility Act was to protect the public from judgment proof negligent drivers by requiring security of owners and operators of motor vehicles following accidents and injuries to others on Texas streets and highways; defendant's agreement as self-insurer with the State being expressly confined to such an obligation; (2) that Humble as owner of the motor vehicle and under its certificate of self-insurance became *jointly* liable to the injured party along with the negligent driver, employee Cole; Humble conceding that so far as the State of Texas and the injured party are concerned, it would be obligated to pay any judgment which an insurance carrier would be required to pay had a policy of liability insurance been issued by an insurance carrier to it; (3) that there is here no question of common law liability as regards defendant Humble, since it is admitted that the employee Cole was on an independent mission at the time of accident, wholly outside the scope of his employment; but not so, concerning the appellant's [Home Indemnity's] insured whose negligence was such as to render him liable to the injured party at common law for all damages sustained; (4) that Cole as a tort feasor at common law was *primarily* liable for his negligent driving; and by filing a certificate of self-insurance, the car owner has merely contracted with the State of Texas that *he too* agrees to compensate an injured party for negligent acts of the driver, if an insurance company would be required to do so, had it issued a policy of liability insurance to the

self-insurer. But the owner's or self-insurer's liability is *secondary* to that of the negligent driver; and had the injured party sued Cole, appellant's insured and this appellee jointly, (because its negligence was secondary only) Humble could have pleaded over against Cole, the actively negligent party, and could have recovered judgment against him for such sum as was decreed against it. * * * Under the contention made, appellant would seek to reverse the situation. But to relieve the Home Indemnity Company of primary liability in this case, the 'other collectible insurance' must be insurance inuring to the benefit of its policy holder Cole and 'collectible' by him. He could not sustain a suit against Humble, his employer, for recoupment of damages paid by him in satisfaction of a judgment rendered against him as a result of his own *primary* negligence; and neither can the Insurance Company in its own behalf, as an indemnitor and on exactly the same footing as Cole, its insured. * * *

" * * * 'The fallacy of Appellant's position lies in the fact that it makes an unwarranted assumption as to the actual provisions of the Motor-Vehicle law. Appellant proceeds upon the erroneous assumption that by virtue of its certificate of self-insurance appellee has assumed all the obligations which arise under a Texas Standard Policy of Automobile Liability Insurance. Nothing could be further from the truth, for the full extent of the obligations assumed by a self-insurer is set out in Section 18(4) of the Motor Vehicle Safety-Responsibility Act, which provides that the self-insurer shall file with the State an agreement "that, with respect to accidents occurring while the certificate is in force, he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer." To say that a self-insurer will pay the same judgments and in the same amounts as an insurance company would

have had to pay is one thing; while it is obvious that to assume all the obligations that exist under a Standard Automobile Liability Policy is quite another thing. A Standard policy calls for the assumption of many obligations other than the payment of a judgment rendered against the insured —among which, and probably the most important, is to indemnify the insured against loss, even as against his own negligence. The guarantee by a self-insurer to pay any judgment that an insurance carrier would have to pay can operate only for the benefit of the State of Texas and the injured party and cannot in any sense of the word be construed to operate for the benefit of the negligent driver (even though he be an employee), and deprive the self-insurer of his right to judgment over against him. And, in the event of a judgment over against the negligent driver, Appellant's Endorsement 80 would operate to indemnify the negligent driver against such loss, for indemnification against loss to the insured is precisely what the policy contract of the Home Insurance Company has provided it will do.' "

Later, the Supreme Court of Texas in the same case (reported in 317 S.W.2d 515) refused Home Indemnity's application for writ of error in a per curiam opinion in which it said it agreed with the holding of the Court of Appeals that the qualification of Humble as a self-insurer did not provide Cole with other valid and collectible insurance within the meaning of the Home Indemnity policy.

We hold that Missouri Power's statutory obligations as a self-insurer did not constitute other valid and collectible insurance within the meaning of the American Family liability policy issued to Mr. Sohns, and that, under the facts of this case, Missouri Power is not liable for any of the Hilderbrand damages.

The judgment is affirmed.

DONNELLY, C. J., and HOLMAN and FINCH, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

. MORGAN and BARDGETT, JJ., dissent and concur in dissenting opinion of SEILER, J.

SEILER, Judge.

The principal opinion quotes portions of Home Indemnity v. Humble Oil & Refining Company, 314 S.W.2d 861 (Tex.Civ. App.1958) to the effect that had the injured party sued Humble's employee and Humble Oil & Refining Company jointly, then Humble Oil could have pleaded over against its employee and recovered judgment against him for such sum as was decreed against it. Later in the Texas opinion, reference is made to the proposition that the self-insurer cannot be deprived of its right to judgment over against the negligent driver.

This is an attempt to mix apples and oranges—a general rule as to indemnity in a respondeat superior situation with liability of an insurer under the standard omnibus clause. I certainly would not want to approve the Texas case as representing the Missouri law on the subject. In the case before us, for example, if Mr. Sohns had not had any liability insurance on his own automobile and had nevertheless had the accident in question while driving the automobile owned by Missouri Power & Light with its permission and on his own personal business, or if Sohns had not been an employee and was simply operating the Missouri Power & Light automobile with permission and on his own business, there is no question but that Missouri Power & Light, as self-insurer, would have had to pay the claims of Mr. and Mrs. Hilderbrand resulting from Sohns' negligent operation of the Missouri Power & Light vehicle. This is because our statute, Sec. 303.190, RSMo 1969, V.A.M.S., defines the words "motor vehicle liability policy", where used in Ch. 303, to include the usual omnibus coverage found in the standard automobile liability policy whereby the in-

surer covers the named insured and also any other person using any of the specified motor vehicles with the permission of the named insured. Sec. 303.160.1(4) provides that the self-insurer certify that he will pay the same judgments and amounts that an insurer would have been obligated to pay under an owner's *motor vehicle liability policy* had it issued one to the self-insurer. In other words, an omnibus clause is required of self-insurers by our statutes.

It is equally clear that no insurance company which writes a policy of insurance on an automobile belonging to its insured has any right of indemnity against a person who is using the described automobile with the permission of the named insured and injures someone. The reason, of course, is that this is exactly what the insurance company has agreed to do—pay such claims. I am unable to perceive on what basis a self-insurer would have any greater right in this respect than an ordinary insurer.

The Texas case is a subject of a case note in 13 Southwestern Law Journal 272. This note, at l.c. 274-75, points out that the Texas court ignores significant portions of the Safety Responsibility Act (which act is quite similar to our act). The note says: " . . . First the act indicates that a self-insurer plays *two* roles, viz., that of an employer of the negligent employee and that of *insurer* of himself and any other person driving the vehicle *with his permission.* . . . Thus interpreted, the act places liability on the self-insurer, *as an insurer,* to pay judgments against its negligent employee; the common-law rule of agency restricting the liability of a principal to the scope of the agent's duties becomes immaterial, as do any tort-law distinctions between 'primary' and 'secondary' liability. It is a basic principle of public liability insurance law that the policy insures *anyone* operating the in-

sured's vehicle with the *permission* of the named insured. . . . Thus, the basis of the self-insurer' liability under the act is that of *ownership* of the vehicle driven by *anyone* having the *permission* of the owner, rather than any agency relationship existing between the driver and the owner of the vehicle. Illustrating the logical inconsistency of the court's decision, if any company carried an ordinary public liability policy on its vehicle, the insurance carrier would be liable to a third party injured by the negligence of anyone, including employees, who drove the vehicle with the insured owner's permission . . . If a self-insurer must pay the same judgments as a regular insurance carrier in these circumstances[1] . . . then it follows that the self-insurer also would be liable . . . ."

As the Texas case note points out, if the decision is carried to its logical extreme, injured plaintiffs will not recover from self-insurers unless the self-insurers in their capacity as "employers" would be liable at common law. I agree with the statement in the case note that it is difficult to conceive that the legislature contemplated such a result. Additionally, as is further pointed out in the case note, the practical result of today's decision is to shift the payment of judgments from the self-insurer to other insurance companies by the simple expedient of requiring all employees to have excess coverage endorsements in their policies on their personal cars, with the public at large sharing the burden in increased insurance rates. Another result of today's interpretation of the statutes is that self-insurers reap an extravagant windfall. They not only save all the premiums they would otherwise have to pay on their fleets of automobiles, but they also force other people to pay increased premiums for insurance coverage for the accidents which are bound to occur wherever a company with a large fleet of auto-

---

1. The Missouri statute so stipulates, Sec. 303.160(1) (4).

mobiles permits its employees or others to use the company cars on personal business. In addition, in the case before us, the self-insurer escapes payment of damages (here $20,000 for personal injuries and $400.00 property damage) for which its coverage, under established insurance law as set forth below, is the primary coverage. All this is in addition to the fact that the self-insurer does not have to prove the existence of liability insurance on its cars nor post a deposit of cash or securities as everyone else is required to do who has an accident where more than $100 property damage to another vehicle is involved. I do not believe the legislature had any intention that a self-insurer could escape primary liability in the circumstances before us. To the contrary, the legislature, I believe, intended to require that the self-insurer, in reciprocation for the advantages it obtains as a self-insurer, must pay claims when called on to do so to the same extent as would a regular insurer under the omnibus clause of the standard policy.

In my opinion, it is clear that under our safety responsibility act and the facts of the present case that Missouri Power & Light was obligated to provide coverage to its employee who was driving a company automobile with its permission. Furthermore, as between coverage provided by Missouri Power & Light on its car and the coverage provided by American Family on Sohns' personal car, the Missouri Power & Light coverage was primary as to an accident involving its car under the general rule and practice in the insurance industry placing primary liability on the insurer of the automobile owner rather than on the insurer of the operator. Powell v. Home Indemnity Company, 343 F.2d 856 (8th Cir. 1965); Fidelity & Casualty Co. of New York v. Western Casualty & Surety Co., 337 S.W.2d 566 (Mo.App.1960); State Farm Mutual v. Mid-Continent Casualty Co., 378 S.W.2d 232 (Mo.App.1964); Blashfield, Automobile Law and Practice, 3d Ed., Vol. 8, Sec. 345.10, pp. 493–94;

Appleman, Insurance Law and Practice, Vol. 8, Sec. 4914, p. 400. The reasoning is that the coverage written on a particularly described and owned automobile in the standard automobile liability policy is designed primarily to afford coverage for liability arising out of the operation of that automobile by the insured or his permittee. On the other hand, the coverage provided by the standard policy for one operating a vehicle other than the one described in his policy is intended mainly to avoid a liability exposure during incidental use of other vehicles. Olson v. Hertz Corporation, 270 Minn. 233, 133 N.W.2d 519, 523. So in a situation where both policies could apply it is logical to look first to the policy which provides coverage for broad user of the particular vehicle involved in the accident, rather than to the policy which provides coverage only as incident to covering the driver on his own car.

It is true there are cases where two insurance policies are involved and each provides that its coverage is excess if there is other valid and collectible insurance, so that there is no rational way to choose between them, in which case the courts will hold both carriers liable in proportion to the amount of insurance provided by their respective policies, as, for example, was done in Arditi v. Massachusetts Bonding & Insurance Company, 315 S.W. 736 (Mo. 1958). This problem generally is found only in cases where garage liability or similar policies are involved, where use of a variety of non-owned automobiles is part of the business. No such mutually repugnant other insurance clauses are involved here, nor would there ever be in the ordinary automobile liability insurance policies where one policy provides omnibus coverage on the vehicle involved in the collision and the other policy provides non-owned automobile coverage for the driver. In that case only one excess insurance clause is involved. "Under such a policy, and as to such a coverage, the insurance company issuing the policy [here this would be

American Family] is not liable for any part of the loss or damage which is covered by the other insurance—it is liable only for the amount of loss or damage in excess of the coverage provided by the other policy . . ." 7 Am.Jur.2d Automobile Insurance, Sec. 201, p. 543.

There is no claim here that the "other valid and collectible insurance" endorsement on the American Family policy issued to Sohns was illegal or against public policy. On the contrary, it is the usual provision found in the standard automobile liability insurance policy. See text of Standard Provisions and Appendix for General Automobile Policies, Risjord-Austin, Automobile Liability Insurance Cases, 1964 ed. and July 1974 supplement. Except as prohibited by statute or public policy, parties to an insurance contract are free to place such limitations on the insurer's liability as they agree upon. Webb v. State Farm Mut. Ins. Co., 479 S.W.2d 148 (Mo.App. 1972). The validity of "other valid and collectible insurance" clauses such as contained in the American Family policy before us has been expressly upheld. See Penn v. National Union Indemnity Co., 68 F.2d 567 (5th Cir. 1934); Blashfield, Automobile Law and Practice, 3rd Ed., Vol. 8, Sec. 345.10, p. 480. Sohns and American Family were free to and did agree that as to American Family's coverage to Sohns when driving someone else's vehicle it would be excess if there was other valid and collectible insurance covering the loss.

Under the circumstances before us, the primary coverage due Sohns by Missouri Power & Light as self-insurer was "other valid and collectible insurance", so that the American Family coverage was excess and therefore the primary insurance of the self-insurer should be the first to pay up to the limits of its coverage. For these reasons I respectfully dissent and would reverse the judgment with instructions that Missouri Power & Light pay plaintiff $20,000 for the bodily injury liability and $400.00 for the property damage liability.