65 F.3d 741
 Kathleen QUICK, assignee of Kendrick Wilhite, Appellee,
v.
NATIONAL AUTO CREDIT, formerly known as Agency Rent-A-Car,
Inc., Appellant.
Missouri Organization of Defense Lawyers, Amicus Curiae.
Enterprise Rent-A-Car, Inc.,[1] Amicus Curiae.
 Nos. 94-3989, 95-1045.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1995.
Decided Sept. 12, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Nov. 2, 1995.
 
 Kenneth Slavens, St. Louis, MO, argued (James B. James and Timothy W. Luft, on the brief), for appellant.
 Jeams Newberry, Springfield, MO, argued (Thomas W. Millington, on the brief), for appellee.
 Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.
 BEAM, Circuit Judge.
 
 
 1
 In July 1992, Kendrick Wilhite was involved in a car accident while driving a vehicle leased to him by Agency Rent-a-Car (Agency). A wrongful death action stemming from the accident was filed against Wilhite. Without an appearance by Wilhite or anyone on his behalf, a default judgment was entered. The wrongful death plaintiffs obtained an assignment of Wilhite's claims against Agency and prosecuted the present action, alleging breach of contract and bad faith refusal to settle. A jury found Agency liable, and the district court denied various post-trial motions. Agency appeals. We affirm in part, reverse in part, and remand with directions.
 
 I. BACKGROUND
 
 2
 In July 1992, Wilhite rented a car from Agency in Lincoln, Nebraska, so that he could drive to his home in St. Louis, Missouri. On the return trip to Lincoln, Wilhite was involved in a car accident in Missouri. Eleven-year-old Anne Quick was killed in the accident. Others were injured in varying degrees.
 
 
 3
 Anne's mother, Kathleen Quick, retained Cynthia MacPherson to handle the wrongful death claim. One week after the accident, MacPherson contacted Agency and spoke with Steve Ockajick, who worked in Agency's claims department. MacPherson testified that she offered to accept $25,000 from Agency, the amount of protection afforded by the rental contract.
 
 
 4
 Two weeks later, Ockajick sent Wilhite a letter informing him that the maximum protection under the rental agreement was $25,000 per person and $50,000 per occurrence. The letter notified Wilhite that portions of the claims might exceed these limits and advised him to contact his insurance carrier and personal legal counsel. Wilhite acknowledges receiving this letter.
 
 
 5
 Between September 1992 and March 1993, MacPherson and other counsel for Kathleen Quick attempted to negotiate with Agency and settle the claim.[2] When these attempts failed, Quick filed the wrongful death action against Wilhite. On March 23, 1993, Wilhite was served with a summons and petition. Wilhite did not notify Agency of the summons and did nothing on his own.
 
 
 6
 On March 30, 1993, MacPherson called Ockajick. She informed Ockajick that the wrongful death action had been filed in Wright County, that Wilhite had been served process, and that time was running for an answer to be filed. Ockajick told MacPherson that he had turned the file over to the legal department and that someone would get back to her once the file had been reviewed.
 
 
 7
 After speaking to MacPherson, Ockajick called Wilhite and left a message on his answering machine asking Wilhite to return the call. Wilhite testified that he never received the message from Ockajick. He also testified that when his roommates came home before him, they would sometimes erase the messages and sometimes leave them on the tape.
 
 
 8
 As indicated, no appearance was entered in the wrongful death action. On April 27, 1993, a default judgment was rendered against Wilhite for $6.5 million. Agency learned of the default judgment one week later. Agency then attempted, unsuccessfully, to contact Wilhite.
 
 
 9
 On September 23, 1993, Wilhite and Quick entered into an agreement. Under the terms of the agreement, Wilhite assigned to Quick his claims against Agency. In return, Quick agreed to forbear enforcing the judgment against Wilhite "until and unless all legal and equitable remedies are exhausted against Agency."
 
 
 10
 In November 1993, Quick, as assignee for Wilhite, filed the present diversity action in federal district court. Quick alleged that Agency had breached its contract with Wilhite by failing to defend him in the wrongful death action and that Agency had acted in bad faith by refusing to settle within the contractual limits prior to the entry of default judgment. Agency filed a declaratory judgment action in state court. Agency asked the district court to stay the trial until the declaratory judgment action was concluded, but the district court refused.
 
 
 11
 The trial was held in September 1994, and the jury returned a verdict in favor of Quick. The jury awarded Quick $6.5 million in actual damages, plus interest from the date of the default judgment, and $885,000 in exemplary damages.[3] In addition, the district court enjoined Agency from proceeding with the declaratory judgment action in state court. Agency filed a motion for new trial or, in the alternative, for judgment as a matter of law. The district court denied the motion.
 
 II. DISCUSSION
 
 12
 In Missouri, a breach of the duty to defend sounds in contract, while a breach of the duty to settle sounds in tort.[4] Ganaway v. Shelter Mut. Ins. Co., 795 S.W.2d 554, 556 (Mo.Ct.App.1990); Landie v. Century Indem. Co., 390 S.W.2d 558, 562-63 (Mo.Ct.App.1965). The district court denied Agency judgment as a matter of law on both the breach of contract and the bad faith claims. We review these denials de novo. Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 904 (8th Cir.1995).
 
 A. Breach of Contract
 
 13
 In its brief, Agency concedes that under the rental contract it had a duty to defend Wilhite up to the limits of the protection provided by the contract. Agency breached this duty by failing to arrange for counsel to enter an appearance for Wilhite in the wrongful death action. Agency contends, however, that the breach of contract claim should not have been submitted to the jury because Wilhite failed to plead or prove that he substantially performed the contract. The contract requires Wilhite to "fully cooperate" with Agency in investigating and defending claims arising from his use of the rental car but does not specifically require him to notify Agency of receipt of summons. Nevertheless, Agency argues that Wilhite violated the cooperation clause by failing to notify Agency of service of process.[5] We disagree.
 
 
 14
 Well within the time to plead, Agency was informed that a petition had been filed and that Wilhite had been served. Agency could have verified this information with a single phone call to the clerk of court. Under these circumstances, Wilhite's failure to notify Agency did not constitute a violation of the cooperation clause. See Thompson v. Columbia Mut. Ins. Co., 820 S.W.2d 626, 632 (Mo.Ct.App.1991) (holding that insured did not violate cooperation clause, despite failure to notify of service, when insurer had a copy of the petition within the time to plead). Agency is not entitled to judgment as a matter of law on the breach of contract claim. Therefore, Agency is liable for the protection Quick was due under the rental contract--$25,000.
 
 B. Bad Faith
 
 15
 Agency contends that the bad faith claim should not have been submitted to the jury. In support of this contention, Agency presents several arguments related to the substance of the bad faith claim.
 
 
 16
 Agency first argues that demand by the insured is an essential element of a bad faith claim and that Quick has failed to establish such a demand. Missouri has long recognized the tort of bad faith failure to settle. See Zumwalt v. Utilities Ins. Co., 228 S.W.2d 750, 755 (Mo.1950). Missouri courts have generally held that a bad faith plaintiff must prove, among other things, that "the insured has demanded that the insurer settle the claim brought against the insured." See, e.g., Dyer v. General Am. Life Ins. Co., 541 S.W.2d 702, 704 (Mo.Ct.App.1976). Nevertheless, some Missouri opinions have suggested that demand is not required if the insurer has failed to notify the insured of an offer of settlement. See Ganaway, 795 S.W.2d at 564 ("[I]f the insured were not advised of the offers of settlement, he could not have demanded that the offer be accepted."); c.f. State Farm Fire & Cas. Co. v. Metcalf, 861 S.W.2d 751, 758 (Mo.Ct.App.1993) (Shrum, J., concurring) (stating that if insurer has thwarted possibility of demand, then insurer should be estopped from arguing lack of demand).
 
 
 17
 Agency did not notify Wilhite of Quick's offers to settle the claim within the policy limits. In fact, after Agency had been informed of the pending wrongful death action and before the entry of default judgment, Agency made only one attempt to contact Wilhite, leaving a message on his answering machine and apparently giving up when Wilhite failed to respond. In these circumstances, we are reluctant to find that Quick's claim fails for lack of a demand although that may be the law of Missouri. For the sake of discussion of other issues, we will assume, without deciding, that Wilhite was not required to demand settlement.
 
 
 18
 Agency also argues that it is not an insurance company and, as such, it is not liable for a bad faith failure to settle. On a simplistic level, Agency is partially correct. Agency is a rental car company, not an insurance company, and it has not attempted to comply with the innumerable statutes and regulations governing the business of insurance. Quick would have us hold that, because Agency is a qualified "self-insurer" under Missouri's Motor Vehicle Financial Responsibility Law, Agency is the functional equivalent of an insurance company, and thus a bad faith claim will lie. Such a holding would be contrary to the teachings of the Missouri Supreme Court.
 
 
 19
 According to Missouri's Motor Vehicle Financial Responsibility Law, a self-insurer must promise to pay the same judgments in the same amounts as an insurer would be obligated to pay. Mo.Rev.Stat. Sec. 303.160.1(4). The Missouri Supreme Court has recognized, however, that a self-insurer does not automatically assume all the rights and duties that would exist under an insurance policy. American Family Mut. Ins. Co. v. Missouri Power & Light Co., 517 S.W.2d 110, 113-14 (Mo.1974) (en banc). The Motor Vehicle Financial Responsibility Law assures financial remuneration to injured parties; it obliges owners to protect the public from judgment-proof drivers by ensuring certain minimum payments. Id. at 113. Self-insurance is confined to this obligation. Id. The self-insurer's guarantee to pay any judgment operates in favor of the state and the injured party, and does not in any sense operate for the benefit of the negligent driver. Id. at 114. Accordingly, Agency's status as a self-insurer does not transform it into an insurance company with obligations of indemnity to its lessee.
 
 
 20
 Ultimately, however, Agency's status as a self-insurer or an insurance company is not determinative. A cause of action for bad faith failure to settle is based not on the defendant's status as a liability insurer but, rather, on a particular balance of power. When one party assumes control of the right to settle claims, then that party has the duty to exercise good faith in considering offers to compromise the claim. Ganaway, 795 S.W.2d at 556. In other words, an action for bad faith refusal to settle does not lie unless the defendant reserved to itself the exclusive right to accept an offer to compromise a claim and to settle a dispute. See Zumwalt, 228 S.W.2d at 753; Ganaway, 795 S.W.2d at 557.
 
 
 21
 Whether such a reservation exists depends on the specific language of the contract at issue. In Ganaway, the Missouri Court of Appeals found that the insurer had reserved to itself the right to settle claims. The Ganaway liability insurance contract provided, in part:[T]he Company shall defend any suit alleging [covered] bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false, or fraudulent; but the Company may make such investigation or settlement of any claim or suit that it deems expedient....
 
 
 22
 The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, or incur any expense other than for such immediate medical or surgical relief to others as shall be imperative at the time of the accident.
 
 
 23
 795 S.W.2d at 556-57. In contrast, the Agency rental contract language at issue in the present action provides:
 
 
 24
 [Agency] will settle or defend, as it considers appropriate, any claim or suit seeking damages for bodily injury and/or property damage up to the MINIMUM dollar amount required for any one (1) rental automobile, per occurrence, in accordance with the applicable motor vehicle financial responsibility laws of the state in which this agreement of rental was executed by the parties hereto. In addition to our limits of liability, we will pay all defense costs we incur. Our duty to settle or defend shall end when our limits of liability for this coverage have been exhausted by tendering such limits in any manner, eg. [sic] to excess carrier.
 
 
 25
 Appellee's App. at 115.
 
 
 26
 A comparison of these two contract provisions reveals that the latter does not reserve to Agency the exclusive right to settle claims. First, the contract in Ganaway required the insurer to consider settling even "groundless, false, or fraudulent" claims, but the rental contract does not require Agency to do the same. Second, the Ganaway contract gave the insurer the power to settle any claim, while the rental contract gives Agency the power to settle claims only up to the specified limits. Third, and most significantly, the rental contract does not prevent the renter or the renter's liability insurance carrier from negotiating a settlement, and does not penalize the renter or the carrier for doing so. As such, Agency lacks the total control over the settlement process which would be necessary to impose upon Agency the duty to settle in good faith.
 
 
 27
 Because Agency did not have the exclusive right to settle claims arising from Wilhite's use of its rental car, Agency did not have a fiduciary duty to give good faith consideration to offers to settle. Agency could not have breached a fiduciary duty it did not have.
 
 
 28
 In addition to its substantive arguments, Agency argues that a bad faith claim is not assignable. In Missouri, the general rule is that causes of action are assignable if they survive to the personal representative. Beall v. Farmers' Exch. Bank, 76 S.W.2d 1098, 1099 (Mo.1934); Property Exch. & Sales, Inc. v. Bozarth, 778 S.W.2d 1, 2 n. 1 (Mo.Ct.App.1989). An exception to this general rule exists. Although personal injury actions survive, see Mo.Rev.Stat. Sec. 537.020, they are not assignable, Beall, 76 S.W.2d at 1099; Bozarth, 778 S.W.2d at 2 n. 1; Forsthove v. Hardware Dealers Mut. Fire Ins. Co., 416 S.W.2d 208, 217 (Mo.Ct.App.1967). See also Eastern Atl. Transp. & Mech. Eng'g, Inc. v. Dingman, 727 S.W.2d 418, 423 (Mo.Ct.App.1987) (holding that a tort claim is assignable to the extent that it provides the basis for an award of exemplary damages in an otherwise assignable action for breach of contract). Under this scheme, Wilhite's bad faith cause of action is not assignable.
 
 
 29
 However, this result is cast into doubt by Ganaway. In Ganaway, the Missouri Court of Appeals upheld a bankruptcy trustee's assignment of the debtor's bad faith claim. The court reasoned that, under the 1978 Bankruptcy Act, all legal and equitable interests of the debtor, including causes of action, became a part of the bankruptcy estate. The court then stated that "the general law" allows a bad faith claim to be assigned to a judgment creditor either by the insured or by a bankruptcy trustee. 795 S.W.2d at 565 (citing only Annotation, Assignability of Insured's Right to Recover over Against Liability Insurer for Rejection of Settlement Offer, 12 A.L.R.3d 1158 (1967)).
 
 
 30
 The conflict between Ganaway and the other Missouri precedent is clear: under Ganaway, Wilhite's claim is assignable, while under the other cases, it is not. We think, however, that Ganaway runs upstream from clearly established Missouri law. See Forsthove, 416 S.W.2d at 217. Ganaway is further distinguishable because it involves an often stated exception to nonassignability, statutory authorization (through the bankruptcy act). See Forsthove, 416 S.W.2d at 216 (unless otherwise provided by statute, claim for damages for personal tort is, at law, nonassignable). Accordingly, we hold that Wilhite's bad faith cause was nonassignable. Thus, Agency is entitled to judgment as a matter of law on this claim.
 
 C. Other
 
 31
 In its brief, Agency has presented a number of additional arguments addressing, among other things, certain evidentiary rulings and jury instructions. Having carefully considered all of the arguments and issues, we find that those arguments not mooted by the foregoing discussion are without merit.
 
 III. CONCLUSION
 
 32
 The district court denied Agency judgment as a matter of law on both claims. We conclude that Agency is not entitled to judgment as a matter of law on the breach of contract claim, but is so entitled on the bad faith claim. Accordingly, the judgment of the district court is affirmed in part and reversed in part. The cause is remanded with directions to enter judgment in the amount of $25,000 plus interest as provided by law in favor of Quick.
 
 
 33
 McMILLIAN, Circuit Judge, specially concurring.
 
 
 34
 I concur in the panel opinion on the breach of the duty to defend and the nonassignability of the bad faith refusal to settle issues. I write separately, however, because I do not agree that Agency as a certified self-insurer has no duty to settle. I do not think the Missouri legislature intended self-insurers to escape certain liabilities, such as for breach of the duty to settle, that would attach to third-party insurers.
 
 
 35
 As noted by the panel opinion, at 745, Agency is a car rental company, not an insurance company. It is a self-insurer under Missouri law. For the reasons discussed below, I think a self-insurer is much closer to an insurance company than does the panel opinion, particularly with respect to the duty to settle.
 
 
 36
 First, I would construe the rental contract to reserve to Agency a sufficient degree of control of the right to settle claims, although admittedly not an expressly exclusive right, especially when considered in light of the other provisions of the rental contract as well as Agency's actions under the rental contract. As noted by the panel opinion, id. at 745-46, the rental contract in the present case does not use language as restrictive as that in Ganaway v. Shelter Mutual Insurance Co., 795 S.W.2d 554, 556 (Mo.Ct.App.1990) (Ganaway), much less as restrictive as that in Zumwalt v. Utilities Insurance Co., 360 Mo. 362, 228 S.W.2d 750, 752 (1950). Nonetheless, the rental contract does provide that "Agency will settle or defend, as it considers appropriate, any claim or suit seeking damages" and does not qualify or condition settlement or defense upon any notification or consultation with the lessee (the car rental customer). As noted by the panel opinion, at 746, the rental agreement does not expressly prohibit the customer, or the customer's insurer, from negotiating a settlement. The rental contract does not contain a provision like that in Ganaway explicitly barring the insured, except at his or her own cost, from voluntarily making any payment, assuming any obligation or incurring any expense other than for immediate medical expenses. 795 S.W.2d at 557. The rental contract does, however, provide that its indemnification and hold harmless agreement "shall not apply ... to any obligation assumed by the Customer or driver under any contract of whatever nature," a condition which arguably would penalize the customer, or the customer's insurer, from negotiating a settlement, without the approval of Agency.
 
 
 37
 Other provisions of the rental contract support an insurance relationship. The rental contract includes an indemnification agreement under which Agency agrees to protect the customer against claims for damages for bodily injury or property damage, up to the minimum dollar amount required for one rental automobile per occurrence, as required by the applicable motor vehicle financial responsibility law. The rental contract also requires customers to notify Agency of any accidents occurring while they operate the rental vehicles and to cooperate with Agency, its agents or employees in the investigation, defense or prosecution of any claim or legal proceeding arising out of the operation or use of the rental vehicle. Agency investigates claims made by injured persons against its customers and employs claims adjusters and attorneys to investigate and resolve those claims.
 
 
 38
 Here, Agency has conceded that under the rental contract it had a duty to defend its customers, up to the limits of its liability. Agency's claims adjuster investigated the accident, negotiated with plaintiff's representatives about a possible settlement, and consulted Agency's legal department about the settlement. In addition, during the litigation of the present case, Agency advanced defenses typical of insurers, such as failure to notify and failure to cooperate, as well as failure to make a demand for settlement.
 
 
 39
 Next, as noted by the panel opinion, under Missouri law, self-insurers do not automatically assume all the rights and duties that would exist under an insurance policy. Op. at 745, citing American Family Mutual Insurance Co. v. Missouri Power & Light Co., 517 S.W.2d 110, 113-14 (Mo.1974) (banc) (Missouri Power). I have no quarrel with Missouri Power under the facts of that case. I would not, however, read Missouri Power to permit a self-insured to escape liability under the facts of the present case.
 
 
 40
 In Missouri Power an employee had an accident while driving a company car, with the employer's permission, on personal business. The employer was a self-insurer. The Missouri Supreme Court held that the employer's statutory obligation, as a self-insurer, to pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer, did not constitute "other valid and collectible insurance" within the meaning of the employee's liability policy. Id., citing Home Indemnity Co. v. Humble Oil & Refining Co., 314 S.W.2d 861, 865-66 (Tex.Ct.Civ.App.1958) (Humble Oil ). The majority opinion in Missouri Power emphasized the employee-employer relationship, the employer's lack of liability at common law for an accident involving an employee that occurred outside the scope of employment, the employee's primary liability at common law for his negligent driving, and the inability of the employee, and the employee's insurer, to recoup damages paid for the employee's negligence from the employer. 517 S.W.2d at 113-14, citing Humble Oil, 314 S.W.2d at 865-66. The dissenting opinion criticized what it characterized as the majority opinion's unsuccessful "attempt to mix apples and oranges--the general rule as to indemnity in a respondeat superior situation with liability of an insurer under the standard omnibus clause." 517 S.W.2d at 114 (Seiler, J., dissenting); see Hillegass v. Landwehr, 176 Wis.2d 76, 499 N.W.2d 652 (1993) (Hillegass) (employee-employer context; holding self-insurer provided "insurance" within meaning of other insurance clause in liability policy).
 
 
 41
 I believe the dissenting opinion in Missouri Power has the better argument.[1] Accepting the analysis of the majority opinion, however, I would distinguish Missouri Power from the present case on its facts, that is, the absence of the employee-employer relationship emphasized by the majority opinion in Missouri Power. In the customer-car rental agency context, concerns about the doctrine of respondeat superior and employer liability for an employee's personal business outside the scope of employment are irrelevant. Despite Agency's disclaimer that it is not an insurance company, the rental contract and Agency's actions establish that Agency functions substantially like an insurance company, at least with respect to indemnification and settlement of claims against its customers. It is irrelevant to the customer whether the car rental agency is self-insured or obtains insurance from a third-party. See Missouri Power, 517 S.W.2d at 114-17 (Seiler, J., dissenting); Hillegass, 176 Wis.2d at 82-86, 499 N.W.2d at 655-56 (same); see also Gavaghan v. Replacement Rent-A-Car, Inc., 811 F.Supp. 1077, 1081 (E.D.Pa.1992) (Pennsylvania law; rental car customer); Nathanson v. Hertz Corp., 183 Cal.App.3d 78, 84, 227 Cal.Rptr. 799, 803 (1986) (California law; rental car customer); Chambers v. Agency Rent-A-Car, Inc., 878 P.2d 1164, 1165-67 & n. 4 (Utah Ct.App.1994) (Utah law; rental car customer).
 
 
 42
 [T]he legislative decision to permit companies to select the manner in which they are to be "insured" or financially responsible for liability to others should not be confused with [the self-insurer's] contention that self-insured companies be permitted to avoid the obligations and duties that arise from operating motor vehicles [within the state]. Insofar as [the self-insurer] operates motor vehicles within the state ..., it is subject to the risks and liabilities attending that operation--whether it self-retains the risk or contractually shifts the risk to a third-party.
 
 
 43
 Hillegass, 176 Wis.2d at 83, 499 N.W.2d at 655.
 
 
 44
 The cases cited involved liability claims, not claims for bad faith refusal to settle. Nonetheless, I think a self-insurer should be required to pay both liability claims and any claims related to its mishandling of those liability claims to the same extent as would a third-party insurer.
 
 
 
 [1]
 The motion of Enterprise Rent-A-Car, Inc., for leave to file an amicus curiae brief is granted
 
 
 [2]
 There is some dispute as to whether Quick's lawyers ever offered to provide Wilhite a release of all claims in return for the $25,000 payment or, if they did, when this occurred. The jury apparently concluded that a settlement for $25,000 would have been possible before default. For the purposes of this appeal, we assume the accuracy of this factual determination
 
 
 [3]
 The jury instructions allowed the jury to return a verdict in favor of Quick if the jury found either breach of contract or bad faith. Although the verdict form did not require the jury to indicate the basis of liability, the jury's award of exemplary damages is telling. Missouri law permits exemplary damages in a breach of contract action if the breaching party's conduct amounts to a separate, independent tort, or in other circumstances not relevant here. Peterson v. Continental Boiler Works, Inc., 783 S.W.2d 896, 902-03 (Mo.1990) (en banc). Because the jury awarded exemplary damages, we assume that the jury rendered its verdict, at least in part, on the basis of the bad faith claim. Our holding in this appeal eliminates exemplary damages as an element of the breach of contract cause of action
 
 
 [4]
 The district court ruled that Missouri law, not Nebraska law, was applicable. Although probably incorrect, neither party has appealed that ruling
 
 
 [5]
 Agency also argues that Wilhite was uncooperative in failing to appear or take any steps to prevent the default judgment and in failing to assist in setting aside the default judgment. These arguments are without merit
 
 
 [1]
 The Missouri motor vehicle financial responsibility statute defines "motor vehicle liability policy" to include the usual omnibus coverage found in the standard automobile liability policy whereby the insurer covers the named insured and also any other person using any of the specified motor vehicles with the permission of the named insured. Mo.Stat.Rev. Sec. 303.190 (1994). The statute also provides that the self-insurer will pay the same judgments and amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy had it issued one to the self-insurer. Id. Sec. 303.160.1(4)