Janice M. BAKEWELL and John R. Bakewell, Appellants,

v.

MISSOURI STATE EMPLOYEES' RETIREMENT SYSTEM, Respondent.

No. WD 36719.

Missouri Court of Appeals, Western District.

Jan. 28, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 4, 1986.

Application to Transfer Denied April 15, 1986.

John R. Bakewell, Jefferson City, for appellants.

William L. Webster, Atty. Gen., Jerry B. Buxton, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and DIXON and LOWENSTEIN, JJ.

TURNAGE, Judge.

Janice Bakewell and her husband, John, filed a petition against the Missouri State Employees' Retirement System (MOSERS) in which they sought a declaration that Janice was entitled to medical, surgical, and hospitalization insurance coverage and for damages. The Bakewells contend that the denial of coverage for Janice was improper because she applied within the required time, because MOSERS had failed to define satisfactory proof of health, and because it was inconsistent to deny Janice coverage in her own right and to deny her coverage as John's dependent.[1] Affirmed.

From May 1, 1979 through July 31, 1980, Janice was covered by insurance offered by MOSERS pursuant to § 104.310 et seq., RSMo Cum.Supp.1981. During that time Janice was a full-time employee of the Missouri Division of Health. On August 1, 1980, Janice became covered by medical and hospitalization insurance as a depend-ent of John under coverage afforded to him as an employee of the Missouri Division of Employment Security. Pursuant to § 288.-225, RSMo 1978 medical and hospitalization insurance for employees of the Division of Employment Security is not administered by MOSERS. This results from the large amount of federal funding the Division of Employment Security receives.

On January 8, 1982, John ceased to be an employee of the Division of Employment Security and began employment with the Missouri Department of Revenue. Medical and hospitalization insurance for Department of Revenue employees is administered by MOSERS. When John ceased to be an employee of Employment Security, Janice ceased to be covered under his insurance as a dependent. She thereupon applied to MOSERS for coverage in her own right as a state employee and supplied evidence concerning her good health. MOSERS determined that Janice had failed to demonstrate that she was in good health and was therefore ineligible to be insured in her own right.

Within two days after Janice was denied coverage as a state employee, John applied to MOSERS to have her covered under his policy as a dependent. MOSERS declined to give her coverage as a dependent because of its policy that one state employee may not be covered as a dependent on another state employee's policy. This suit followed.

At trial Janice testified that she voluntarily dropped her insurance through MOSERS when John became employed by Employment Security because they felt it would be less expensive and because they thought it was more likely that Janice would leave state employment rather than John. However, John unexpectedly lost his job at Employment Security and the coverage problem for Janice began.

Mary Jean Hackwood testified that she is the executive secretary of MOSERS.

---

1. This is the second appeal in this case. The first is reported in 668 S.W.2d 224 (Mo.App. 1984).

Hackwood testified that she had experience in medical programs in both private companies and state government prior to assuming her duties with MOSERS. She stated that normally an employee is not eligible for coverage as a dependent of another employee. She said the policy of MOSERS was that one state employee may not be covered as a dependent of another state employee.

■ Bakewell first contends that Janice was not eligible to be covered under a MOSERS medical policy while she was covered as John's dependent under the Employment Security policy because of the definition of "employee" in § 104.310(20) RSMo Cum.Supp.1981. That section defines "employee" as one who is employed by a department in a position normally requiring the actual performance of duties during not less than 1500 hours per year. That section excludes any employee who is currently accumulating benefits under some other retirement or benefit fund to which the state is a contributor with certain exceptions not applicable here. Bakewell contends that while Janice was covered as a dependent under the Employment Security policy she was an employee accumulating benefits under another retirement or benefit fund to which the state contributed and was thus ineligible to obtain a policy from MOSERS in her own name. This contention misconceives the status of Janice while she was covered as John's dependent. As a dependent she was not an employee of Employment Security and was therefore not accumulating benefits under Employment Security's retirement or benefit fund. She was simply covered for medical and hospitalization services under John's policy as his dependent, but was certainly not entitled to accumulate benefits as an Employment Security employee. She remained an employee of the Division of Health and as such accumulated benefits under that employment. Her coverage as John's dependent did not require her to be a state employee. During the time she was covered as John's dependent she was entitled to coverage as an employee of the Division of Health and could have retained

her own coverage rather than electing to drop her own coverage in favor of obtaining coverage as John's dependent. The evidence indicates that the Bakewells knowingly elected to discontinue coverage for Janice as an employee in favor of coverage as John's dependent. Unfortunately their plan failed to achieve its goal because John unexpectedly lost his job with Employment Security. The Bakewells do not contend that the state misled them in any way or that they acted in any manner other than with full knowledge of what they were doing. Since Janice remained a full-time employee of the Department of Health while she was covered as John's dependent she remained eligible to apply for coverage in her own name. In order to obtain coverage without supplying evidence of good health she was required to apply within 31 days after becoming eligible. Since Janice was eligible to apply from August 1, 1980 until she actually did in January of 1982, she did not apply within 31 days of becoming eligible and was therefore required to submit satisfactory evidence of good health.

■ Bakewell next contends that MOSERS did not have a regulation defining satisfactory proof of good health. The contention is that without such definition MOSERS was free to act arbitrarily to deny Janice coverage for failure to show that she was in good health at the time she applied in January of 1982.

MOSERS had adopted 16 C.S.R. 30–3.020 which was in effect from October of 1981 until February 11, 1982. This regulation required that an application for medical and hospitalization insurance made more than 31 days after an employee became eligible must be accompanied by a satisfactory statement of health. The brochure prepared by MOSERS explaining its plan states that an employee applying more than 31 days after becoming eligible must provide satisfactory evidence of good health. Janice sought to comply with the requirement that she prove satisfactory health but MOSERS found that she did not

show evidence of satisfactory health. A copy of the application for coverage by Janice and the proof of good health which she submitted was not introduced in evidence nor was there any evidence as to the information supplied by her. The argument contends only that the failure to define the terms used regarding good health allowed MOSERS to act in a arbitrary fashion. Good health has been said to mean that a person has no grave, important, or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. *Schuetzel v. Grand Aerie Fraternal Order of Eagles*, 164 S.W.2d 135, 141 (Mo. App.1942). This illustrates that the term good health is subject to being understood and given meaning. The terms satisfactory statement of health and satisfactory evidence of good health are words of common usage and understanding. It was not necessary for MOSERS to include a definition of these words because they are capable of being understood. Of course it is possible to act in an arbitrary fashion whether or not certain terms are defined in a regulation. However, there is no evidence that MOSERS acted in an arbitrary fashion in finding that Janice failed to supply evidence of good health. The regulation on its face was not arbitrary and there is no evidence that MOSERS applied the regulation in an arbitrary manner. Thus, the finding that Janice failed to supply evidence of good health does not contravene any rule of law.

Finally Bakewell challenges the policy of MOSERS not to allow Janice to be covered as John's dependent in a program administered by MOSERS. Section 104.-515.3, RSMo Cum.Supp.1981 requires the board of MOSERS to establish rules of eligibility for participation in a medical, surgical, and hospitalization insurance program. Hackwood testified that the board had adopted a policy that one state employee could not be covered as a dependent of another state employee.[2] Bakewell contends that it was inconsistent for the board to state that Janice was eligible for coverage in her own name as a state employee yet at the same time state that she was ineligible for coverage as John's dependent. It is readily apparent that the two positions are not inconsistent because of the board's policy that one employee may not be covered as a dependent of another employee. The perceived inconsistency arises in this case only because of the failure of Janice to show that she was in good health at the time she applied for her own coverage in January of 1982. The board acted pursuant to law in adopting the rule that one employee could not be covered as the dependent of another. It also acted pursuant to law in requiring that an application filed more than 31 days after the date of eligibility be accompanied by satisfactory proof of good health. There is no inconsistency between the two positions taken by MOSERS. Had Janice been able to prove good health in January of 1982, she would have been covered in her own name. Failing in that, the board was not required to abandon its policy and permit her to be covered as John's dependent.

It is unfortunate that the Bakewells' plan to provide coverage for Janice at the least possible expense was thwarted by John's unexpected departure from Employment Security, coupled with the state of the health of Janice at that time. However the brief of MOSERS advises that an open enrollment period without proof of good health was provided for state employees in July of 1985 and that Janice took advantage of that opportunity and is now covered in her own name.

The judgment in favor of MOSERS is affirmed.

All concur.

2. The board had a regulation which spelled this out but that was temporarily rescinded during the time John applied for dependent coverage. Hackwood testified the board operated during that time as though the regulation were in effect and treated all employees the same in that regard.