**Michele A. HIGGINS,**
**Plaintiff–Appellant,**

**v.**

**MISSOURI STATE EMPLOYEES**
**RETIREMENT SYSTEM,**
**Defendant–Respondent.**

**No. WD 40080.**

Missouri Court of Appeals,
Western District.

Sept. 6, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1988.

Application to Transfer Denied
Dec. 13, 1988.

J. William Turley and Ronald D. White of Robinson, Turley, Turley and White, Rolla, Joseph W. Rigler, Salem, for plaintiff-appellant.

William L. Webster, Atty. Gen., Jerry B. Buxton, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

Before TURNAGE, P.J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a civil class action by female employees of the state covered by the Medical Care Plan (hereinafter "Plan") of the Missouri Employees' Retirement System (hereinafter "MOSERS") who conceived children prior to January 1, 1984 and delivered those children after December 31, 1983. Members of the plaintiff class seek a declaratory judgment that their maternity benefits must be paid according to the 1982 Plan in effect at the time they conceived rather than according to the reduced 1984 Plan in effect at the time they delivered, injunctive relief and damages. The trial court granted summary judgment for MOSERS. The judgment is reversed and remanded.

Michele Higgins, plaintiff-appellant, was employed by the State of Missouri in 1983. As a state employee, Higgins received insurance coverage under the MOSERS Plan, revised effective July 1, 1982. This Plan provided full maternity benefits under a combination of a Basic Medical Care Plan and Major Medical Care Plan. Maternity benefits were treated "the same as any other medical condition." Before January 1, 1984 and while the 1982 Plan was in effect, Higgins became pregnant.

On January 1, 1984, a new Plan of MOSERS went into effect. Under the 1984

Plan, only eighty-percent of maternity care expenses were covered. The revision provided only a major medical care plan and introduced a deductible of $150.00 for both an employee and dependent child.

Higgins came to term and gave birth on January 16, 1984. Her maternity benefits were paid under the terms of the new 1984 Plan. Hence MOSERS paid the claims based upon the reduced 1984 Plan in effect at the time of the child's delivery as opposed to the 1982 Plan in effect at the time of conception. Higgins sued for $685.49, the difference in maternity benefits between the two Plans.

MOSERS moved to dismiss the petition for failure to state a claim upon which relief could be granted. The trial court allowed argument on the Motion to Dismiss and received as exhibits the 1982 and 1984 Plans. Accordingly, by agreement of the parties, the trial court treated the motion as a Motion for Summary Judgment. The parties also agreed to admit the facts of Higgins' coverage under the Plan, conception prior to January 1, 1984, and delivery of her child after that date.

The trial court entered summary judgment for the MOSERS and this appeal followed.

■ Appellant, through the reply brief, asks the court to strike the brief of MOSERS' for violation of the Rules of Appellate Procedure. Higgins claims that the Statement of Facts is argumentative and includes legal citations, the Points Relied On ignore the dictates of *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978), the brief is not responsive to the issues raised by appellant, and ignores Rule 84.04(f). Although the brief of MOSERS does not strictly comply with Rule 84, it is not so totally lacking in conformity that the harsh remedy of striking the brief should result, *Raines v. City of St. Louis,* 711 S.W.2d 544 (Mo.App.1986), *Counts v. Morrison–Knudsen, Inc.,* 663 S.W.2d 357, 364 (Mo.App. 1983).

Review of a summary judgment is a two-step process involving, first, a determination that there is no genuine issue of fact requiring trial and, second, that the judg-

ment is correct as a matter of law. *State ex rel. Kirkpatrick v. Bd. of Election Comm'rs,* 686 S.W.2d 888 (Mo.App.1985).

On appeal, appellant charges that the trial court erred in entering summary judgment for MOSERS because there were issues of fact to be tried to the finder of fact and, as a matter of law, the judgment was incorrect in declaring the liabilities under the 1984 Plan.

The record reveals that there was no genuine issue of material fact requiring trial. Appellant claims that unadmitted facts not discussed in the record preclude the granting of a summary judgment. Appellant lists the allegedly unadmitted facts as whether appellant was employed, when she was employed, when she became pregnant, when the child was born and whether the policy of insurance existed. However, appellant presents no further argument on this point.

Appellant is incorrect in asserting that there exists no record discussing these facts. The trial court heard arguments by counsel and received ten exhibits reflecting versions of prior MOSERS Plans, the 1982 Plan, and the 1984 Plan. Additionally, the record on appeal contains admissions in the form of three letters which are dispositive of the factual issues.

The first letter, written by the trial judge to both parties, advised them that, absent objections, factual matters presented during the arguments of the Motion to Dismiss would be considered and the motion treated as one for summary judgment. Both parties were told they would have an opportunity to be heard, including the filing of affidavits and other appropriate documents.

Appellant's counsel, in the second letter, responded that there was no objection to such a treatment of the motion. The letter went on to state:

> In that event, the only document I would need leave to file is an affidavit, by the plaintiff Michele Higgins, that she was covered under the plan, that she conceived prior to the date the plan changed benefits and that she delivered

her said child after that date. By copy of this letter to (the attorney for MOSERS) I am requesting that he admit those facts which are tacitly admitted in his statement of facts anyway.

If I have an agreement that those may be considered as facts by the court without the necessity of affidavit, I will have no further documents to file unless I need to respond to new documents filed by (the attorney for MOSERS).

■ The attorney for MOSERS replied through the third letter that these facts were previously set forth before the court. To alleviate any doubt, the facts were admitted by MOSERS. No additional evidence or documents were presented by MOSERS. It is clear from the pleadings, exhibits and documents on file with the trial court that there are no genuine issues of fact which preclude summary judgment. The only unresolved issue between the parties was the rule of law to be applied to these facts. Summary judgment will not be precluded if the only facts charged to be in dispute are the differing opinions of the parties as to the legal effect of an ascertained state of facts. *Friends of City Market v. Old Town Redevelop. Corp.*, 714 S.W.2d 569, 576 (Mo.App.1986); *Packet Dairy v. Ziegler's Super Market, Inc.*, 676 S.W.2d 926 (Mo.App.1984).

In the second step of a review of a summary judgment, the court must determine whether the judgment is correct as a matter of law. The legal issue in this case is whether the 1982 Plan, which was in effect when members of the plaintiff class conceived, applies to afford full maternity benefits for costs of hospitalization during pregnancy and childbirth where the 1982 Plan was terminated and replaced by a reduced 1984 Plan before the pregnancies ended. The trial court ruled, as a matter of law, that the 1982 Plan did not apply to afford full maternity benefits to state employees in the plaintiff class who conceived prior to December 31, 1983 and who gave birth after January 1, 1984, the date the new Plan became effective.

Appellant takes the position that members of the plaintiff class must recover full maternity benefits pursuant to the 1982 Plan because their entitlement to maternity benefits vested when they conceived children while the 1982 Plan was in effect. MOSERS contends that payment of those maternity benefit claims under the 1982 Plan would be erroneous because the provisions of the 1982 Plan allowed MOSERS to modify a Plan when needed and provided coverage only for childbirth, not pregnancy. MOSERS also contends that payment of claims which it received after January 1, 1984 under the terms of the 1982 Plan would cause MOSERS to violate nondiscrimination provisions of the federal civil rights laws and ignore its statutory duties. Finally, MOSERS raises the contention that it could terminate a Plan at anytime because the benefits were merely a gratuity to state employees who received no deduction from their paycheck for their coverage under any MOSERS Plan.

■ Medical Care Plans provided by MOSERS are in the nature of insurance policies and will be treated as such. The statutory provisions governing medical expense payments for public officers and employees, § 104.515.1, RSMo 1986, is written so as to specify the insurance characteristic of the Plans:

**104.515 Insurance and disability benefits amount, waiver of, conversion of, termination of—state contribution, amount—dependents', retirees', and special consultants' coverage.**

1. The Board shall provide or contract, or both, for insurance benefits to cover medical expenses for employees under sections 104.310 to 104.540, persons covered by the provisions of sections 287.812 to 287.855, RSMo, and employees who are members of the judicial retirement system as provided by section 476.590, RSMo ...

Furthermore, previous cases before this court have acknowledged that MOSERS is a body corporate and instrumentality of the state of Missouri which provides a program of insurance to cover hospital, surgical and medical expenses of qualified state employees. For example, *see Bakewell v. Mo. State Employees' Retirement System*, 668

S.W.2d 224, 225 (Mo.App.1984), *reh'g denied,* 706 S.W.2d 268 (Mo.App.1986). Additionally, insurance contracts are to be construed strictly against the insurer and any ambiguity is to be resolved in favor of the persons insured. *Lutsky v. Blue Cross Hospital Service, Inc.,* 695 S.W.2d 870, 875 (Mo.1985).

■ The Missouri Supreme Court has recently reaffirmed the widely held rule that a master group policy can be cancelled or modified by the group sponsor so as to terminate the coverage of an individual member without the latter's consent if such right is given by the contract. *Behr v. Blue Cross Hosp. Service, Inc.,* 715 S.W.2d 251, 252 (Mo. banc 1986). Like the Blue Cross Hospital Service Group Membership Certificate in *Behr,* the MOSERS Plan, revised effective July 1, 1982, contains numerous provisions outlining the insurer's right to modify or terminate the Plan and implications stemming from such a modification or termination. The 1982 Plan provides:

### ARTICLE I DEFINITIONS

\* \* \* \* \* \*

E. PLAN: Senate Bill 548 of the 76th General Assembly authorized the Trustees of the Missouri State Employees' Retirement System to establish a self-funded plan of medical care benefits (hereinafter sometimes referred to as the "Missouri State Medical Care Plan" or the "Plan"). This Plan Document, as revised and in effect July 1, 1982, delineates the terms of the Plan established by the Trustees in accordance with Sections 104.310–104.550 RSMo., and will be interpreted by the Trustees in accordance with the laws of the State of Missouri.

\* \* \* \* \* \*

### ARTICLE II

\* \* \* \* \* \*

B. The membership period shall begin on the participant's effective date in the Plan, as determined by the Trustees and specified in Article II.D. below. The membership shall continue until this Plan or coverage hereunder is terminated

for any reason as provided in Article XI of this Plan Document....

\* \* \* \* \* \*

### ARTICLE VIII   EXTENDED BENEFITS FOR ALL PARTICIPANTS

A. EXTENDED BENEFITS: DISABILITIES RESULTING FROM ILLNESS OR INJURY

1. If, as a result of illness or accidental injury, a participant incurs eligible expenses under the Plan after termination of coverage hereunder, the Plan will recognize such expenses, not to exceed the maximums specified in 2. and 3. below, provided that:

   a. It is established that the participant was totally disabled when benefits terminated and remained so disabled until the date of the confinement or rendered service.

   b. The confinement or rendered service is the result of the injury or sickness causing the disability.

   c. Due proof is furnished that the services or hospital confinement would have been eligible for benefits had the confinement commenced or service been rendered while the coverage was in effect.

   d. Termination is for reasons other than termination of the Plan.

\* \* \* \* \* \*

B. EXTENDED BENEFITS: PREGNANCY–RELATED DISABILITIES

1. Benefits will be payable hereunder for eligible Basic Benefit and Major Medical expenses which meet the requirements specified in Article VIII.A. 1.b.c., and d. above.

2. Benefits will be payable in the same manner as for any nonpregnancy related condition.

\* \* \* \* \* \*

### ARTICLE XI   TERMINATION OF COVERAGE

A. The coverage of a participant shall terminate on the first of the calendar month coinciding with or next following the happening of any of the following events, whichever shall first occur:

1. Failure to make any required contribution toward the cost of coverage.
2. Entry into the armed forces of any country.
3. Termination of eligibility for coverage:
   a. With respect to employees, termination of membership shall occur upon termination of employment, except as specified in C. below.
   b. With respect to dependents, termination of membership shall occur upon ceasing to be a dependent as defined herein.
4. Immediately upon discontinuance of the Plan, subject to the Plan Termination Provision specified in Article XIII.

\*  \*  \*  \*  \*  \*

### ARTICLE XIII  MISCELLANEOUS PROVISIONS

\*  \*  \*  \*  \*  \*

N. Termination of the Plan: Any other provision of this Plan to the contrary notwithstanding, no benefit will be paid for charges incurred by an (sic) Participant or former Participant after the termination of this Plan except hospital room and board and other hospital expenses incurred during a continuous period of hospital confinement for which a Participant or a covered dependent was admitted prior to the termination of the Plan up to the Maximum number of days provided for in the Schedule of Benefits.

The above provisions of the 1982 Plan give MOSERS the right to establish, interpret, discontinue and terminate the Medical Care Plan. The Missouri Supreme Court in *Behr* looked beyond the termination rights stated in the group policy to determine when the liability insured against arose. To defeat liability on an insurance contract, the termination of the policy must be effective before any liability attaches. *Behr*, 715 S.W.2d at 253.

Appellant argues that liability attached at the moment of conception because the 1982 Plan was designed to provide coverage to defray the costs attending to pregnancy. Accordingly, after appellant conceived coverage could not be terminated by MOSERS and liability exists under the 1982 Plan. MOSERS argues that the insured event was maternity, meaning the event of actually giving birth to a child and, consequently, the 1982 Plan was effectively terminated before the liability for childbirth attached.

■ The maternity benefits language of the policy, in this case the 1982 Plan, determines the extent of the liability. In the recent *Behr* case, the Missouri Supreme Court explored the language of maternity benefit provisions in group insurance policies and discovered two general types of provisions. The first type of provision provides for maternity care benefits "for any condition arising out of and during pregnancy," or for hospital care in obstetrical cases "including any illness resulting from pregnancy and delivery and aftercare", or for "obstetrical services, including prenatal and post-partum care, and treatment of conditions resulting from pregnancy or delivery." This type of provision has been held to provide insurance coverage from the moment of conception, continuing throughout the period of pregnancy. *Behr*, 715 S.W.2d 253. The second type of provision contains terminology such as "if a married woman or the wife of the insured, if a dependent, shall while this policy is in force ..., give birth to a child or children, the company will pay the expenses actually incurred with the expenses therewith." This second type of maternity care provision has been interpreted as limiting the insurer's liability to the expenses of the event of childbirth alone. *Id.*

The 1982 Plan uses the following provisions to describe its maternity benefits:

### ARTICLE IV  BASIC BENEFITS FOR NON–MEDICARE ELIGIBLE PARTICIPANTS

\*  \*  \*  \*  \*  \*

C. MATERNITY BENEFITS
1. If a participant is confined in a hospital as a result of pregnancy, complications of pregnancy, childbrith (sic), or

miscarriage, the Plan will pay the room and board (including nursery) benefit and the miscellaneous hospital services expense benefit as defined in A.1.c. above to the same extent as for any other accidental bodily injury or illness.

2. If a participant undergoes a surgical operation or obstetrical procedure as a result of pregnancy or as a complication thereof, the Plan will pay the amount of any surgical fees actually charged for such operation or procedure but not in excess of the amount specified:

a. in the Schedule of Benefits for delivery of child or children, Caesarean Section, or miscarriage, or

b. in the Maximum Surgical Fee Schedule contained in the Administrative Manual for procedures resulting from complications of pregnancy.

3. Abortion benefits will be provided in accordance with the ruling of the Attorney General of the State of Missouri....

In light of the rules established in *Behr* interpreting the language of maternity care provisions in group health insurance policies, this Court holds that the Maternity Benefits provisions of the 1982 Plan of MOSERS attach liability at the moment of conception when the liability, namely pregnancy, arises. By its terms, the 1982 Plan will pay benefits for hospital confinements "as a result of pregnancy." Indeed, the 1982 Plan covers expenses for hospital confinements as a result of pregnancy, complications of pregnancy, childbirth or miscarriage as well as surgical fees for an obstetrical procedure as a result of pregnancy or as a complication thereof. These maternity benefits provisions are not restricted to the event of childbirth alone. In fact, miscarriages and complications of a pregnancy are also specifically insured against. Appellant and members of the plaintiff class conceived prior to the termination of the 1982 Plan and should, consequently, receive full maternity benefits according to its provisions.

Appellant concludes that liability under a policy of insurance will not be relieved where the insured conceived prior to the change in policy. This court cautions that appellant's conclusion holds true only if the policy language is worded so as to cover pregnancy and resulting medical expenses; it is not true for existing policies which cover only expenses associated with childbirth or delivery.

■ The parties question whether either or both of two exhibits in the record should be construed as contractual provisions of the 1982 Plan. Exhibit 6 is a booklet distributed to state employees sometime in 1982 to describe MOSERS Benefits under the Medical Care Plan. The relevant portion of Exhibit 6 contains the following description of maternity benefits at page 19:

Under the Basic Part of the plan, benefits for maternity care are provided the same as any other medical condition. Routine nursery care for a newborn infant is provided for the same length of time as the mother's normal hospital confinement.

If the newborn baby requires treatment other than routine nursery care, this treatment will be covered only if dependent coverage under the Medical Care Plan is already in effect. (See page 12, "Enrolling new dependents.")

The second exhibit, marked Exhibit 9, is a publication by MOSERS entitled Benefits Review, dated November/December, 1983, and distributed to employees. The front page of the publication displays the article, "Medical Care Plan: Questions and Answers", which reads in pertinent part:

The following are the answers to commonly asked questions about the changes in the Medical Care Plan.

A more complete explanation of the changes of the plan will be detailed in the new Medical Care Plan booklet, which will be available in January.

Q: I am now pregnant and will have my baby after January 1, 1984. Will my delivery expenses by (sic) subject to the new plan?

A. Yes. Only those people in the hospital or totally disabled on January 1 will still be subject to the old (basic/major medical) plan.

An advertising brochure describing maternity benefits constitutes a part of the insuring agreement if the brochure contains provisions found nowhere else which are essential to a complete contract, and where the provisions pertaining to maternity benefits are ambiguous, they will be construed against the insurer. *Behr*, 715 S.W.2d at 255, *Lutsky*, 695 S.W.2d at 873.

■ As to Exhibit 6, the MOSERS Benefit Booklet, this court answers the question of contract construction by holding that it is not necessary to look to Exhibit 6 to complete the contractual provisions. Exhibit 6 it does not contain provisions which are not in the 1982 Plan and creates no ambiguity. The 1982 Plan sets forth on pages 16 and 33 that maternity benefits and extended benefits for pregnancy-related disabilities are paid to the same extent as any other medical condition stemming from accidental bodily injury or illness. Exhibit 6 adds nothing new by repeating this coverage statement in an abbreviated form and, therefore, need not be construed as part of the 1982 Plan provisions.

As to Exhibit 9, the Benefits Review publication, this court also holds that the exhibit is not part of the 1982 Plan. The article explaining changes which will develop when the new 1984 Plan is implemented cannot be viewed as an essential provision needed to complete the established 1982 Plan.

■ MOSERS contends that appellant was properly paid maternity benefits under the 1984 Plan because the Federal Civil Rights Act, Title VII, 42 U.S.C. § 2000e, et seq. mandates the nondiscriminatory treatment of women affected by pregnancy, childbirth or other related medical conditions for all employment purposes. Hence, MOSERS contends that treating the claims of appellant the same as any other medical claim which arose after January 1, 1984 was the only method by which MOSERS could comply with federal law. The court rejects this contention. At issue is whether the provisions of the 1982 Plan afford coverage from the moment of conception to this class of plaintiffs, not whether MOSERS engaged in discriminatory acts in violation of the Civil Rights Act. Compliance with the contractual provisions of the 1982 Plan and/or the 1984 Plan with respect to all covered employees would not violate the Civil Rights Act.

■ MOSERS next raises the contention that its Board of Trustees was under a statutory duty by § 104.515, RSMo to revise the 1982 Plan to respond to the funding problem created by a financial crisis in 1983, and as a result, if the Board had not implemented the reduced 1984 Plan it would have violated its duties. The court rejects this contention. Appellant has approached MOSERS to enforce vested contractual rights under the 1982 Plan. She does not question the statutory powers or duties of MOSERS to respond to financial pressures by initiating new Plans which would apply to employees who conceived after new Plans became effective. Appellant takes the position, and the court agrees, that MOSERS must comply with the terms of a Plan in effect when the liability insured against arose. The financial health of the MOSERS program for insurance benefits to cover medical expenses of covered state employees will not function to divest members of the plaintiff class of entitlements under the terms of the contract, the 1982 Plan.

■ Finally, MOSERS takes the position that the insurance benefits provided by MOSERS to cover the medical expenses for state employees is a gratuity and, thus, MOSERS has the right to totally cancel the benefits and the reasons for such cancellations or changes are immaterial.

The contention is factually incorrect. To fund the MOSERS health insurance program and to provide resources from which claims by state employees may be paid, the General Assembly authorizes an appropriation each year in a sum calculated to be the insurance premium otherwise payable for such employee's coverage. MOSERS, therefore, receives premium payments

457

from two sources. As to the employee portion of health insurance coverage, the premium is paid by the state. As to spouse and dependent coverage, the premium is paid by the state employee. MOSERS, in actuality, has no concern with the source of premium payments. It has no authority to treat state employees differently as insureds merely because the premiums are paid as an added benefit to the state employment compensation plan. Given the statutory regulations of the MOSERS insurance benefit program and the fact that state employees must pay into MOSERS to receive additional medical benefits coverage for a spouse or dependent, this court is unpersuaded by MOSERS' argument that the insurance benefits are a mere gratuity, not part of the total compensation package of a state employee.

The judgment is reversed and the cause remanded with instructions to enter judgment for appellant and all members of the class so situated on the issue of entitlement to the payment of claims for maternity benefits according to the 1982 Plan in effect at the time they conceived.

The amount of appellant's damages as pleaded in the petition was not controverted in the motion for summary judgment, therefore, that amount is considered as admitted by MOSERS. Rule 74.04(e); *Williams v. Irwin–Willert Co.*, 604 S.W.2d 640, 642 (Mo.App.1980). Judgment should be entered for appellant, Michele Higgins, in the amount of $685.49.

All concur.