**ST. JOHN'S REGIONAL HEALTH CENTER, Appellee,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Appellant.**

**No. 92–1191.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1992.

Decided Dec. 3, 1992.

Rehearing and Rehearing En Banc Denied Feb. 2, 1993.

Paul Paxton Hasty, Jr., Kansas City, Mo., argued (Lee R. Hardee, III, on the brief), for appellant.

Michael J. Patton, Springfield, Mo., argued (C. Bradley Tuck, on the brief), for appellee.

Before John R. GIBSON, BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BEAM, Circuit Judge.

American Casualty Company of Reading, Pennsylvania, (American) appeals a summary judgment[1] holding it liable for indemnification of St. John's Regional Health Center (St. John's). St. John's paid $375,000 to settle a medical malpractice claim against Nurse Ruth Lierz, an employee of St. John's and American's named insured. The payment came from funds pooled by several hospitals operated, managed, or controlled by the Sisters of Mercy Health System, St. Louis, Inc., (Sisters of Mercy, Inc.).[2] We affirm.

## I. BACKGROUND

Nurse Lierz and St. John's were sued for Nurse Lierz's alleged malpractice. At the time of this purported negligence, she was an employee of St. John's acting within the scope of her duties and she was the owner and named insured of a personal liability policy issued to her by American. The pool agreement requires St. John's to have Nurse Lierz purchase this policy as a condition of professional employment.

Nurse Lierz asked both St. John's and American to defend her. American re- fused. St. John's settled the suit, and paid $375,000 to the family of the decedent. This money came, as indicated, from the Sisters of Mercy, Inc.'s pooled liability fund. St. John's, a Sisters of Mercy hospital, then sued American for reimbursement of the settlement paid on Nurse Lierz's behalf.

Nurse Lierz's policy with American has an "other insurance"[3] clause which declares that American is liable only after any other insurance covering Nurse Lierz's liability is exhausted. In its motion for summary judgment, American argued that the Sisters of Mercy, Inc.'s pooled liability fund is such "other insurance," and therefore it had no duty to defend her and is not liable for the $375,000 paid to settle the suit. St. John's also moved for summary judgment on the grounds that the pooled liability fund is self-insurance, and thus is not "other insurance" for the purposes of American's clause. Finding that the pooled liability fund was self-insurance and not "other insurance" for the purposes of American's clause, the district court granted St. John's motion for summary judgment.

The parties have stipulated that the only dispute between them is the legal status of the pooled liability fund. We have jurisdiction pursuant to 28 U.S.C. § 1291. We must determine whether the courts of Missouri would find the pooled liability agreement to be within the meaning of American's "other insurance" clause. *See Interco, Inc. v. National Sur. Corp.*, 900 F.2d 1264, 1266 (8th Cir.1990).

## II. DISCUSSION

 In Missouri, the language of an insurance policy is afforded its generally understood or plain meaning. *See, Fremont*

1. The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

2. Arguably Sisters of Mercy, Inc., rather than St. John's, is the real party in interest and should be the party suing American. Since Sisters of Mercy, Inc., controls and operates St. John's, we find the shortcoming to be one of form and not of substance. Even if this were not the case,

American has waived the issue by failing to raise it below.

3. The clause states: "If you have other insurance which applies to the loss, the other insurance must pay first. It is the intent of this policy to apply to the amount of loss which is more than the limit of liability of the other insurance." Joint Appendix at 133.

*Indem. Co. v. Lawton–Byrne–Bruner Ins. Agency Co.*, 701 S.W.2d 737, 741 (Mo.Ct. App.1985). Therefore we must decide whether the pooled liability agreement is within the plain meaning of "other insurance."

### A. Neither Collateral Employee Indemnification Arrangements · Nor Self–Insurance Are "Other Insurance."

■ Determining the plain meaning of the term "insurance" is not a straightforward task, but several courts wrestling with "other insurance" clauses have noted that "[a]s a matter of common understanding, usage, and legal definition, an insurance contract denotes a policy issued by an authorized and licensed insurance company whose primary business it is to assume specific risks of loss of members of the public at large in consideration of the payment of a premium." *Physicians Ins. Co. v. Grandview Hosp. & Medical Ctr.*, 44 Ohio App.3d 157, 542 N.E.2d 706, 707 (1988) (citing *American Nurses Assn. v. Passaic Gen. Hosp.*, 192 N.J.Super. 486, 471 A.2d 66, 70, *aff'd*, 98 N.J. 83, 484 A.2d 670 (1984)). There are other sorts of risk-shifting agreements which are not insurance contracts, such as private indemnity agreements collateral to the main business or transaction between parties. *Id.* In order to determine the nature of St. John's agreement, we will briefly explore a small sector of the universe of noninsurance indemnification agreements.

In *Physicians*, a hospital's employment contract providing malpractice coverage for an employee was determined not to be "other insurance" for the purposes of the employee's personal malpractice insurance policy. This was because the contractual coverage was collateral to the main purpose of the contract, employment. It was, therefore, merely an indemnity agreement shifting the risk from the doctor to the hospital. The hospital was an independent

organization which elected to self-insure, rather than carry commercial insurance. In *Physicians*, as in *American Nurses*, the court considered the collateral nature of the hospital's contractual responsibility to the employee, as well as the hospital's lack of any duty to indemnify employees for their own primary negligence. It decided that the hospitals' own noncommercial provisions to indemnify their employees did not constitute "other insurance." In the case at hand, the pooled liability fund is a noncommercial indemnity arrangement by the Sisters of Mercy, Inc.; it is collateral to Nurse Lierz's employment; and thus it is not her own "insurance" as insurance is commonly understood. The pool agreement is not available to the public at large, the Sisters of Mercy, Inc., is not a licensed insurer, and the Sisters of Mercy, Inc., is not in the business of issuing insurance.[4] Thus, when compared with the cases factually most similar to this one, it is evident that the pooled liability agreement is not within the plain meaning of "insurance."

The Missouri Supreme Court has not addressed the precise question presented here, but it has determined that a statutory self-insurer is not its employee's "other insurer" as far as the employee's personal liability insurance is concerned. *American Family Mut. Ins. Co. v. Missouri Power & Light Co.*, 517 S.W.2d 110 (Mo.1974) (en banc). In *American Family*, an employee had an accident while using Missouri Power & Light's car. Missouri Power & Light was a self-insurer, statutorily obligated to pay judgments to the same extent an insurance company would be obligated to pay if it were the insurer. The Missouri Supreme Court found that Missouri Power & Light's certificate of self-insurance and statutory obligation to pay—as an insurance company would—did not make its obligation "other insurance" for the purposes of an American Family policy issued to the employee. Thus, the Missouri Supreme Court agrees

---

**4.** American refers us to *Deffry v. American Life & Acc. Ins. Co.*, 193 S.W.2d 509 (Mo.Ct.App. 1946), for the proposition that whether or not the pooled liability agreement is a policy issued by a licensed insurer is irrelevant to our inquiry as to its status as "other insurance." That case,

however, dealt with the statutory categorization of a life insurance policy issued by a licensed insurer, not with the question of whether a given indemnity agreement was "insurance" at all, and is inapposite to our inquiry.

with the many cases that have found that primary self-insurance does not fall within the "other insurance" clauses of liability insurers. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Universal Atlas Cement Co.*, 406 So.2d 1184, 1186–87 (Fla.Dist.Ct. App.1981), *petition denied*, 413 So.2d 877 (Fla.1982); *United Nat'l Ins. Co. v. Philadelphia Gas Works*, 221 Pa.Super. 161, 289 A.2d 179, 181 (1972); *Universal Underwriters Ins. Co. v. Marriott Homes, Inc.*, 286 Ala. 231, 238 So.2d 730, 732 (1970). This finding indicates to us that the Missouri Supreme Court would interpret the "other insurance" clause in Nurse Lierz's policy narrowly, and further convinces us that the pooled liability fund is not "other insurance."

Furthermore, the Missouri Supreme Court noted in *American Family* that because an employee may not sue his or her employer to recoup damages paid for the employee's own primary negligence, neither may the employee's own insurance company, standing in the employee's shoes, evade its responsibilities by looking to the employer. *American Family*, 517 S.W.2d at 113. Likewise, American may not evade its responsibilities to Nurse Lierz by looking through Nurse Lierz to St. John's and the pooled liability agreement.

### B. Categorizing The Pooled–Liability Fund

The Saint Louis Province of the Sisters of Mercy, through the Sisters of Mercy, Inc., manages, operates, and controls a multi-state network of nonprofit hospitals. St. John's is one of those hospitals. The Sisters of Mercy, Province of St. Louis, Self–Insurance Trust is a fund from which tort liabilities incurred by its hospitals (business units) are to be paid. Sisters of Mercy, Inc., maintains this fund by pooling

assessments from each business unit, based on that hospital's past history of claims and on future risk projections. The funding of the pool is reassessed periodically on the basis of the amount each hospital has paid into the fund, and the amount each has needed to withdraw. The fund covers only hospitals controlled by the Saint Louis Province of the Sisters of Mercy or one of its business units. Joint Appendix at 125. If a hospital leaves the fold of the Saint Louis Province of the Sisters of Mercy, it may no longer participate in the fund and the fund will no longer protect it. *Id.*

The above facts describe a self-insuring scheme by the Corporate Members of Sisters of Mercy, Inc. "Self-insurance is the retention of the risk of loss by the one upon whom it is … imposed by law or contract." *Physicians*, 542 N.E.2d at 707. As the entity which controls, manages, or operates the hospitals, Sisters of Mercy, Inc., (along with St. John's, Nurse Lierz's employer) would likely be liable for any judgments rendered as a result of hospital employees' work. *See Blanchette v. Cataldo*, 734 F.2d 869, 875 (1st Cir.1984); *see also Burks v. Leap*, 413 S.W.2d 258, 266 (Mo.1967); *Restatement (Second) of Agency* § 21, § 5 cmt. c, and reporter's note to § 5, app. vol. 3 at 33 (1958). Thus, Sisters of Mercy, Inc., and St. John's have not shifted this risk to a third party in exchange for premiums, but rather have retained all the risk within the Sisters of Mercy, Inc.'s business units. The pooled liability agreement merely organizes Sisters of Mercy, Inc.'s management of the risks of its several business units.[5]

American argues on appeal that the language of the document organizing the liability fund renders the document an insurance contract for the purposes of its "other

---

**5.** Ultimately, how the Sisters of Mercy, Inc., allocates the financing of the pool between its hospitals is immaterial, but we note in passing that the fund is structured to have each business unit eventually cover the liabilities it generates. This structure negates any internal risk-spreading between the business units in the sense

typified by what is generally understood to be insurance. Spreading one's risk over time, rather than across a risk pool, is not insurance, but risk retention or, more precisely, risk-amortization. Such risk-amortization is not within the plain meaning of "insurance," where insureds

insurance" clause.[6] In support of this proposition, American relies on *Burckhardt v. General Am. Life Ins. Co.*, 534 S.W.2d 57, 64–65 (Mo.Ct.App.1975). However, in *Burckhardt*, the court was deciding whether an insurance policy had become an enforceable contract before the insured died. The existence, not the nature, of the contract was in dispute. Therefore, that case does not shed light on the question of whether an existing indemnity agreement between business units under unitary control is within the plain meaning of "other insurance."[7]

Since we find that the pooled liability fund is not "other insurance," American is liable to St. John's or the Sisters of Mercy, Inc., for the $375,000 paid on behalf of Nurse Lierz.

### C. The Pooled Liability Fund As St. John's Insurance

■ Even if we were to consider the pooled liability agreement to be "insurance," the result in this case would not change. American asserts that the pooled liability agreement, according to its plain meaning, provides primary coverage for Nurse Lierz. Read as a whole, the pooled liability agreement extends primary coverage to St. John's, but not to Nurse Lierz. American bases its contentions on only two clauses of the original agreement,[8] and ignores later amendments.

It should be restated that Nurse Lierz was not a "covered party," she was an "employee of a covered party." In 1982, the pooled liability agreement was amended, by a majority vote of the Sisters of Mercy hospitals, to make the liability pool excess to insurance coverage that the hospitals required their employed physicians to maintain. This independent coverage was not to be less than $200,000/$600,000. The 1982 amendment also made each hospital individually and immediately responsible for this minimum required coverage, if any

---

may receive either much less or much more in benefits than they paid in premiums.

**6.** This argument is difficult to follow given the "uncontroverted facts" set forth in American's motion for summary judgment. Under the heading "Statement of Uncontroverted Facts" American says:

1. Plaintiff [St. John's Regional Health Center] is a self-insured corporation.

Joint Appendix at 27. St. John's specifically adopted this American statement through St. John's Suggestions in Opposition to the Motion for Summary Judgment. Joint Appendix at 152.

Since it is also uncontroverted that Lierz is an employee of St. John's, a covered party under the pool agreement, and that Lierz is an indemnitee under the agreement as an employee of St. John's, American's contentions break down under analysis. Even without this concession by American, however, as we explain, the pool agreement is not insurance for the purposes of the American policy issued to Lierz.

**7.** The other Missouri cases to which American refers us are similarly inapposite. *Higgins v. Missouri State Employees Retirement Sys.*, 760 S.W.2d 449 (Mo.Ct.App.1988), *cert. denied*, 490 U.S. 1047, 109 S.Ct. 1956, 104 L.Ed.2d 425 (1989), involves a question of whether medical retirement benefits are vested entitlements or gratuities, and the scope of these benefits. The court used rules of interpretation derived from medical insurance jurisprudence to decide the scope of the benefits. Here, we use rules of construction derived from insurance jurispru-

dence to determine the meaning of "other insurance." Beyond that, the case gives us no guidance. Likewise, *Lutsky v. Blue Cross Hosp. Serv., Inc.*, 695 S.W.2d 870 (Mo.1985) mentions that the Missouri rule of construing ambiguities in favor of insureds, in determining the scope of benefits, applies to HMOs as well as to insurance companies. We are in agreement, but find the case of no consequence for our inquiry.

**8.** The first clause defines who is eligible for indemnification:

Each of the following is indemnified under this Agreement to the extent set forth below: A. The entities designated on Exhibit # 1 as covered parties and any executive officer, director, trustee, or corporation member thereof while acting within the scope of his/her duties as such; B. Each employee of a covered party and any religious volunteer, or medical staff member while acting within the scope of their assigned duties for a covered party.

Joint Appendix at 44.

The second clause provides the extent of indemnification:

*Insurance*

The protection afforded by this agreement is primary protection and when the covered party has insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Pool's liability under this Agreement shall not be reduced by the existence of such insurance.

Joint Appendix at 48–49.

physicians failed to maintain it. Joint Appendix at 58. In 1986, the agreement was further amended to require that all professional employees of the Sisters of Mercy, Inc., hospitals obtain individual malpractice insurance in the amount of $500,000/$500,000, as a precondition of a given hospital participating in the fund. Joint Appendix at 72. Although the 1986 amendment did not specifically address the excess coverage idea contained in the 1982 amendment, read together, the two amendments fairly indicate that the pooled liability agreement was not intended to be available to indemnify the hospitals' professional employees except in amounts over the $500,000 coverage provided by the required insurance policies.

Thus, even if the pooled liability fund could be construed to be St. John's insurance, by its terms it does not extend coverage to St. John's professional employees for amounts under $500,000. Accordingly, Nurse Lierz, a professional employee, did not have "other insurance" for liabilities under $500,000 and American is liable.

### III. CONCLUSION

Because we find the pooled liability fund is not "insurance," we affirm the judgment of the district court.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting and concurring.

I concur in the court's judgment to the extent that it is based on the proposition that the relevant pooled liability agreement did not cover the event that gave rise to this case. I respectfully dissent, however, from so much of the court's opinion that holds that the pooled liability agreement is not "other insurance."

In the first place, I am uneasy about the conclusion that, because it is collateral to an employment contract, the coverage provided cannot be insurance. If an employer required an employee to have a liability policy and then promised to pay the premium, or if an employer purchased coverage for an employee directly from a commercial carrier, the fact that the coverage was made available collaterally to an employment contract would not make it any the less insurance. (In fact, insurance is a very common employee benefit.) This case is no different as a matter of economic reality. It would seem to me, moreover, that the plain meaning of the Appellant's policy is that it restricts coverage to those situations in which a risk has not already been shifted from a covered party to someone else. In common parlance, the covered party is an insured and the someone else is an insurer.

Secondly, the unfocused state of the record before us makes me dubious about the proposition that Sisters of Mercy, Inc. (Sisters), would be liable for the torts committed by St. John's employees, and, presumably, for those committed by the employees of all the other relevant hospitals as well. Perhaps Sisters would be liable. But for me, the allegation that Sisters controls, manages, or operates all of the hospitals which contribute to the pooled liability fund lacks sufficient specificity to support a finding of the agency relationship necessary for liability. I would like to know a lot more about the precise relationship between Sisters and the other relevant entities before I agreed to the court's conclusion. For instance, suppose Sisters simply assigns members of its order to certain hospitals as administrators who are paid by those hospitals. It would be perfectly plausible to describe this situation as one in which Sisters is "managing" the hospitals, but, without more, Sisters would not be liable for the hospitals' employees' torts. The hospital would be liable, but not Sisters, because neither the hospital nor the employees were agents of Sisters.

Finally, even if I agreed with the court's analysis concerning the nature of the pooled agreement here, I would not, in view of the availability of the alternate grounds for deciding the case, reach the question. I would leave it for a later day when a better record, and the necessity of deciding the question, might make for a more deliberate and mature reflection, and, perhaps, a different result.