DECISION
Before this Court is Reliance Insurance Company's (hereinafter plaintiff) request for declaratory relief. Plaintiff petitions this Court to determine the legal rights and duties of the respective parties under an insurance contract it issued to Arden Engineering Constructors (hereinafter Arden) wherein New England Telephone (hereinafter defendant) was named as an additional insured. Specifically, plaintiff seeks determination of whether its coverage under this policy is primary or excess in light of defendant's "self-insurance." Jurisdiction is pursuant to R.I.G.L. 1956 (1985 Reenactment) § 9-30-1 et seq.
 Facts
In 1992, Arden Engineering Constructors, Inc. and the defendant executed a contract under which Arden would act as general contractor in the construction modifications to equipment owned by the defendant. As part of this contractual agreement, Arden approved an additional clause in its insurance policy stating that the defendant would be included as an additional insured for the purposes of this particular job. Arden is insured by the plaintiff.
On July 15, 1993, one of Arden's foremen working on defendant's project was allegedly injured when he stepped off an elevator on defendant's property. The defendant alleges that this employee was laid off two days after the accident and has been paid workers' compensation benefits for his injuries. A negligence action was brought, in part, against the defendant and the defendant now seeks indemnification by plaintiff pursuant to the clause in the insurance contract. Plaintiff filed the instant motion for declaratory judgment in order to determine the rights and obligations of both parties under the terms of the insurance policy.
 Duty to Defend and Indemnify
Plaintiff argues that it has no duty to defend or indemnify this defendant, claiming that the general liability policy at issue does not cover the injury underlying this claim. Plaintiff asserts that the terms of the policy clearly include only injuries occurring while an Arden employee was performing chiller replacement work. The plaintiff further argues that because this employee was exiting an elevator at the time he was injured, he was not "working" for purposes of coverage under the policy. Finally, the plaintiff claims that the defendant's status as a "self-insured" entity relegates plaintiff's obligation to that of "excess" rather than "primary" insurer and, therefore, under the "other insurance" clause contained in the instant liability policy, the defendant is liable for the amount of damages awarded to Arden's employee.
Relying Flori v. Allstate Ins. Co., 388 A.2d 25, 26 (R.I. 1978), the plaintiff asserts that "determining whether an insurer has a duty to defend requires nothing more than comparing the allegations in the complaint with the terms of the policy." The plaintiff's reliance on Flori in support of its argument that the language in the general liability insurance did not cover the event which gave rise to the underlying negligence action is misplaced. Following Flori, this Court finds plaintiff's argument to be fundamentally flawed.
Review of plaintiff's insurance policy must be conducted in conjunction with the contract. As these facts indicate, the addition of defendant as an insured on Arden's policy was a condition of the contract; therefore, these documents must be read in tandem. With respect to the employment contract, the language in Article 2 entitled "The Work" provides:
 "the work shall consist of major modifications to the existing chilled water plant and boiler feed water repairs.
 Without limiting the generality thereof the work of this Contract shall include new chillers, pumps, piping, controls, electrical services, insulation, structural modifications, some cutting, demolition, concrete, masonry, miscellaneous steel, plumbing, carpentry, gypsum wallboard systems, painting and mechanical work." (emphasis added)
The insurance policy states that New England Telephone is to be an additional insured "as respects work done for them by the named insured only for the following job: chiller replacement." The generality of the language in the insurance policy does not negate the import of the specific description included in the initial employment contract. Additionally, it is clear from the inclusion of the phrase "without limiting the generality thereof" that the parties to this contract intended that it outline the nature of the job, but not limit the responsibilities in such a way so as to exclude other activities required in order to complete the work.
A foreman, or any workman for that matter, whose job requires traveling between floors on an elevator does not rid himself of his employment status for the duration of the ride. Further, this Court finds that this inevitability is contemplated and accounted for in the terms of the liability insurance policy.
 Self-insurance Is Not "Other Insurance"
The plaintiff further argues that it does not owe the defendant the duty of defense or indemnity because the defendant has chosen to be self-insured. Therefore, citing Nabisco, Inc. v. TransportIndem. Co., 192 Cal.Rptr. 207 (App. 1983), plaintiff argues that the defendant is "responsible for the defense costs attributable to the extent of its self-insured retention." The plaintiff supports its argument by citing the "other insurance" clause contained in the Reliance insurance policy.
Sections IV(4)(a), (b) and (c) of the aforementioned insurance policy state:
 "a. coverage provided under this Coverage part is primary except as stated in b and c below. When this Coverage Part is primary, our obligations are not affected unless you have other insurance that is also primary. Then, we will pay only the amount of your loss described . . . below.
 b. . . . .
 c. This insurance is excess over the other insurance, whether primary, excess, contingent or on any other basis that covers organizations that the Named Insured acquires or forms . . . .
 d. . . . .
 e. When this insurance is excess, we will have no duty to defend any claim or suit that any other insurer defends. If no other insurer defends, we will undertake to do so but we will be entitled to exercise the insured's rights against all those other insurers."
"As a matter of common understanding, usage, and legal definition, an insurance contract denotes a policy issued by an authorized and licensed insurance company whose primary business it is to assume specific risks of loss of members of the public at large in consideration of the payment of a premium." St.John's Reg. Health Ctr. v. American Cas. Co., 980 F.2d 1222 (8th Cir. 1992) (citing Physicians Ins. Co. v. Grandview Hosp. Medical Ctr., 44 Ohio App.3d 157, 542 N.E.2d 706, 707 (1988)) (citing American Nurses Assn. v. Passaic Gen. Hosp., 192 N.J. Super. 486,471 A.2d 66, 70, aff'd, 98 N.J. 83, 484 A.2d 670
(1984)). See also Greene v. Pacific Mut. Ins. Co., 91 Mass. 217. Under Rhode Island General Laws § 27-14.3-3, "insurer" is defined as "any person who has done, purports to do, is doing, or is licensed or approved to do an insurance business, and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization, supervision, or conservation by, any insurance commissioner, supervision, or conservation by, any insurance commissioner."
Self-insurance is, in fact, the antithesis of true insurance because unlike the latter, self-insurers retain all risk of loss.Physicians Ins. Co. of Ohio v. Grandview Hosp. and MedicalCenter, 542 N.E.2d 706. "Statutes concerning policies and contracts are generally inapplicable to self-insurers." Dill v.Claims Admin. Services, Inc., 4 Dist., 224 Cal.Rptr. 273, 178 C.A.3d 1184. (1986).
"Other insurance" refers only to two or more policies insuring the same risk, and the same interest, for the benefit of the same person, during the same period. See American Ins. Co. v. FreeportCold Storage, Inc., 703 F. Supp. 1475, 1485 (D. Utah 1987);Nationwide Mut. Ins. Co. v. Hall, 643 So.2d 551, 561 (Ala. 1994);McCormick v. Travelers Indem. Co., 496 N.E.2d 174, 176 (Mass. App. Ct. 1986). An individual's or entity's deliberate decision to retain risk and forego insurance is known as "self-insurance."Packing C. v. Commissioner of Internal Revenue, 811 F.2d 1297
(9th Cir. 1987). Liability insurers have frequently attempted to compel self-insureds to share indemnity obligations pursuant to the "other insurance" clauses in the insurers' policies. The question then becomes, do self-insurance mechanisms or schemes constitute "other valid and collectible insurance?" While some states recognize "self-insurance" as "other insurance,"[1] the majority of jurisdictions, including Rhode Island, have held the opposite.[2]
In two cases, Rhode Island courts have addressed the status of self-insurance as compared to "true insurance." See Ellis v.Rhode Island Public Transit Authority, 586 A.2d 1055 (R.I. 1991);Rhode Island Insurers' Insolvency Fund v. Rhode Island PublicTransit Authority, 1994 WL 930906 (R.I. Super 1994). Both cases address self-insurance in the context of automobile accidents because that is one of two situations in which Rhode Island recognizes the use of such coverage.[3] These cases are analogous to the situation at hand because they occurred at a time when automobile liability insurance was not required.
In Ellis v. Rhode Island Public Transit Authority, a Rhode Island Public Transit Authority (RIPTA) vehicle collided with an uninsured automobile. As a result of the accident, a passenger (Ellis) allegedly sustained injuries and brought a negligence suit against RIPTA and the uninsured vehicle. Ellis avered that RIPTA was required to provided uninsured motorist protection to its passengers in accordance with G.L. 1956 § 27-7-2.1, Rhode Island's uninsured motorist statute. Id. at 1056. RIPTA argued that since it was a self-insurer, it was exempt from the cited statute and, therefore, was not obligated to provide protection to its passengers. Id. In this case of first impression, the Rhode Island Supreme Court stated that they ". . . believe that a certificate of self-insurance is not a `policy' under §27-7-2.1 . . . ." Id. at 1058. The Court reasoned that:
 "A policy of insurance is contractual in nature. Two parties, the insurer and the insured, enter into an agreement whereby the insurer agrees, in exchange for the insured's payment of premiums, to make payments to or on behalf of the insured upon the happening of an event. In the case of a self insurer, no contract of insurance exists." Id.
In analyzing the facts of Ellis, our Supreme Court relied, in part, on the fact that Rhode Island did not have mandatory liability insurance laws at that time.[4] Any entity that obtained any insurance did so voluntarily.[5] Therefore, in Rhode Island, defendants retained the financial risk of liability unless they voluntarily obtained outside insurance.
A Superior Court case, Rhode Island Insurers' Insolvency Fund(RIIIF) v. Rhode Island Public Transit Authority (RIPTA), 1994 WL 930906, 1994 R.I. Super. 148 (1994), followed on the heels of theEllis decision. In this declaratory judgment seeking interpretation of the Rhode Island Insurers' Insolvency Fund Act[6], specifically the court was asked to determine whether RIPTA, a self-insured entity, was an "insurer" within the meaning of the act. Id. RIIIF argued that RIPTA's self-insurer status precluded it from recovering monies from the Fund because it functioned the same as an insurer by "maintaining a pool of funds from which to satisfy judgments against it." Id. In response, RIPTA argued that "the function of a self-insurer is fundamentally different than that of an insurer." Id. at 2. In so arguing, RIPTA relied on the Supreme Courts decision in Ellis. Gibney, J. found this reliance sound, stating, "the court implied that self insurance is not a type of insurance at all, but rather certification that the business that holds it has sufficient assets that it does not need insurance." Id. at 3.
In Rhode Island Insurers' Insolvency Fund, the court also looked to other jurisdictions in making its decision, citing in particular Iowa Contractors Workers' Compensation Group v. IowaInsurance Guaranty Ass'n, 437 N.W.2d 909 (Iowa 1989). The Iowa Supreme Court also held that because members of self-insurance groups retain the risk of their own losses, they do not act as insurers. 437 N.W.2d at 917. This Court finds that reasoning persuasive.
The case at bar also occurred when Rhode Island motorists were not required to maintain liability insurance. The law has since changed, however, Rhode Island's businesses have never been required to maintain general liability insurance. As part of the contractual agreement with Arden Engineering Contractors, Inc., the defendant required that it be added as an additional insured on Arden's liability policy. Review of the record indicates that as of January 26, 1993 Arden's policy with the plaintiff contained the following additional language:
 "It is hereby understood and agreed that the following is added as an additional insured:
 New England Telephone
 As respects work done for them by the named insured only for the following job:
 Chiller replacement at Washington Street, Providence, RI."
At a time when liability insurance was not required, this deliberate acquisition of temporary, job specific coverage exemplifies defendant's intent that any incident occurring as a result of the work done on the chiller replacement project be covered by the Reliance policy. It is undisputed that the foreman would not have been on defendant's premises, but for his involvement in this specific assignment. Additionally, in this employment capacity, he is required to have travel from floor to floor, an activity which involves use of elevators.
Having found that self-insurance is not to be equated with "true insurance" and that the injured foreman was engaged in the type of work intended to be covered by the Reliance Insurance Policy, this Court's declares that Reliance is the primary insurer in this matter and, therefore, has a duty to indemnify and defend.
Counsel shall submit an appropriate order and judgment for entry.
[1] White v. Howard, 573 A.2d 513 (N.J. Super 1990); AetnaCasualty Surety Co. v. Market Ins. Co., 296 So.2d 555 (Fla. App. D3 1974). See also Carolina Casualty Ins. Co. v. BelfordTrucking Co. 298 A.2d 288 (N.J. Super. 1972) (holding a self-insured interstate carrier was the primary insurer of equipment leased by it with the lessor's policy being excess coverage only.); Southern Home Ins. Co. v. Burdette's LeasingService, Inc., 234 SE.2d 870 (S.C. 1977) (holding qualified self-insurance constituted "other valid and collectible insurance" within the meaning of a liability insurance policy but also noted that technically, a self-insurer was not an insurer at all and in actuality, a self-insurer provided a substitute for an insurance policy, but reasoned that the legislative intent behind the financial responsibility law was that self-insurance substitute for liability insurance to the extent of the statutory policy limits.) (46 ALR 4th 707, 714). "The court noted that analogously, a self-insurer under the workers' compensation law was required to pay claims that normally a workers' compensation insurer would pay under its policy." (46 ALR 4th 714).
[2] State v. Continental Casualty Co., 879 P.2d 1111 (Idaho 1994); St. John's Regional Health Ctr. v. American Cas. Co.,980 F.2d 1222, 1224-26 (8th Cir. 1992); Wake County Hosp. Sys., Inc.v. National Cas. Co., 804 F. Supp. 768, 777 (E.D.N.C. 1992),aff'd, 996 F.2d 1213 (4th Cir. 1993) (holding, in a case of first impression in North Carolina, that a hospital's partial self-insurance did not constitute "other insurance" within meaning of nurse's professional liability policy rendering its coverage excess to that afforded nurse under "other insurance.");Aetna Casualty Surety Co. v. James J. Benes Assoc., Inc.,593 N.E.2d 1087 (2nd. Dist. 1992) app den. 602 N.E.2d 445; State FarmMut. Auto. Ins. Co. v. Universal Atlas Cement Co., 406 So.2d 1184
(Fla. App. 1981), pet. den. (Fla) 413 So.2d 877; American FamilyMut. Ins. Co. v. Missouri Power Light Co., 517 S.W.2d 110 (Mo. 1974); Universal Underwriters Ins. Co. v. Marriott Homes, Inc.,238 So.2d 730 (Ala. 1970); Southeast Title Ins. Co. v. Collins,226 So.2d 247 (Fla. App. D4 1969) cert den. 232 So.2d 180 (Fla.);Home Indem. Co. v. Humble Oil Refining Co., 314 S.W.2d 861 (Tex. Civ. App. Dallas 1958).
[3] The other situation is that of workers compensation governed by G.L. §§ 28-36 through 28-47.
[4] In Ellis, the plaintiff supported his argument that self insurance should be equated with uninsured-motorist insurance by "citing numerous decisions from foreign jurisdictions where courts, relying on public policy, have extended the requirement of uninsured motorist coverage under a mandatory uninsured-motorist statute to self-insurers even in the absence of express statutory language compelling this result. Ellis, 586 A.2d at 1058. The Court distinguished these cases from the facts in the case before them by noting that all the other jurisdictions required liability insurance or certificates of self-insurance.
[5] "Although it was not required to do so by law, RIPTA obtained a certificate of self-insurance to ensure that anyone injured by its negligence would be able to recover damages for injuries sustained." Ellis, 586 A.2d at 1059.
[6] The Rhode Island Insurers' Insolvency Fund is a nonprofit entity created under this Act. See R.I. Gen. Laws § 27-34-6. Its function is to pay persons with valid claims against insurers who are members of the Fund but who have become insolvent. It is "an insurer of last resort to prevent financial loss or excessive delay in payment to bona fide claimants." RIIIF, 1994 WL 930906.